George L. KREGOS, d/b/a American Sports Wire, Plaintiff,

v.

The ASSOCIATED PRESS, Sports Features Syndicate, Inc., Computer Sports World, Keith Glantz, and Russell Culver, Defendants.

No. 89 Civ. 2007 (GLG).

United States District Court, S.D. New York.

June 10, 1992.

As Amended June 15, 1992.

---

Mark P. Stone, Stamford, Conn., for plaintiff.

Shea & Gould, New York City (Nicholas L. Coch, Walter G. Marple, Jr., Gil Feder, of counsel), for defendant Associated Press.

Norman E. Lehrer, Cherry Hill, N.J., Kuhn & Muller, New York City (Perla M. Kuhn, of counsel), for defendants Sports Features, Computer Sports World, Keith Glantz, and Russell Culver.

## OPINION

GOETTEL, District Judge.

In bygone days, baseball reigned as America's favorite pastime. Sadly, this honor seems to now belong to lawsuits. We see it on every front, on the front pages of newspapers, over cable television's airwaves, and in the public discourse. Too often, the fields of dreams have given way to courtrooms, the drama of sport has dissolved into the wrangling of litigation. This case concerns another short chapter of this story, long the preoccupation of devoted fans, baseball statistics.

## I. FACTUAL BACKGROUND

Plaintiff George Kregos d/b/a American Sports Wire created a form or chart of statistics on baseball pitchers which has been published in newspapers nationwide since 1983. The form includes certain categories of statistics for the game's probable pitchers including their won-loss records, earned run averages ("ERA"), and number of innings pitched against particular opponents.

In 1983, Kregos sent a copy of his form directly to the Sports Editor of the Associated Press ("AP"). In 1984, the AP began running its own form on baseball pitchers' statistics that was nearly identical to the Kregos form. It appears that both the AP and Kregos derive their statistics from Major League Baseball, Inc.

In 1986, the AP revised its pitching form, changing certain statistical categories and adding certain others for men-on-base average and team record. In particular, the 1986 form compiles a pitcher's won-loss records and ERA for all games against the day's opponent instead of Kregos' statistics

for games against the day's opponent at the day's given site. Unlike its AP predecessor and the Kregos forms, the 1986 AP form included categories for "team record" and team record when the day's pitcher started games. The 1986 form is still used by the AP.

Kregos first accused the AP of copying his pitching form in 1984, and shortly thereafter, on the advice of his syndicate, began marking his form with a copyright notice. During discussions over the course of several days, Kregos was told by the AP's attorney that his pitching form was not copyrightable and that Kregos had no legal rights against the AP. Kregos contends that he was convinced by the AP's attorney but responded that it was "wrong." According to Kregos, he meant it was morally wrong for AP to steal his form without being subject to any legal liability.

Also, according to Kregos, defendant Sports Features, which compiled the statistics for the AP pursuant to a contractual agreement, made false representations to him promising, in return for Kregos dropping his pitchers form complaints, to provide him with additional work in football, basketball, and baseball forms. Kregos maintains that he delayed taking any legal action for some time based upon these representations and the subsequent excuses for not delivering the extra work.

Kregos filed applications for copyright registration with the Copyright Office on June 25, 1985 and December 29, 1986. Although Kregos' attorney threatened suit in September 1986, no suit could be brought until Kregos received a certificate of copyright registration for his pitchers form. As plaintiff notes, 17 U.S.C. § 411(a), enacted in 1976, makes a registration of a copyright from the Copyright Office a prerequisite to the institution of a copyright infringement suit. 17 U.S.C. § 411(a) (1988); *see also Demetriades v. Kaufmann*, 680 F.Supp. 658, 661 (S.D.N.Y. 1988).

The Copyright Office, applying a recent regulation regarding copyrights applications for screen displays, delayed making a

final determination on Kregos' applications for two years. During the interim, Kregos' attorney notified counsel for AP and Sports Features in writing of Kregos' intention to sue for copyright infringement upon issuance of his copyright registrations. Kregos commenced suit against the defendants AP and Sports Features in March 1989, four months after the final determination was made granting him his copyrights registrations. During those four months, the parties were engaged in settlement negotiations.

In February 1988, AP's attorney sent Kregos a letter that stated in part that the format and presentation of the AP's baseball pitching statistics are "independently created for the Associated Press." In July 1989, during the course of discovery in this suit, the AP produced a 1984 internal memorandum which stated that the AP's 1984 baseball form "is virtually identical, both in content and in form" to the Kregos form. In creating the AP's form, the memo noted that the AP "consulted various other forms including the [Kregos] form, but used them only as examples."

In February 1990, this court granted summary judgment in favor of defendant AP on the grounds that the plaintiff's form was not copyrightable. *See Kregos v. Associated Press*, 731 F.Supp. 113 (S.D.N.Y. 1990). On appeal, the Court of Appeals reversed on the copyright issue and remanded the case for decision on the copyright claim dependent upon resolution of certain other issues. *See Kregos v. Associated Press*, 937 F.2d 700 (2d Cir.1991); *but see Victor Lalli Enterprises v. Big Red Apple, Inc.*, 936 F.2d 671 (2d Cir.1991) (holding that a compilation of race horse statistics was not entitled to copyright protection). The Circuit Court, however, affirmed the district court's holding that the form was not protected under the Lanham Act.

At a conference in August 1991, this court allowed the plaintiff to file an amended complaint. Kregos did so on August 30, 1991 asserting additional claims under New York statutory and common law for unfair competition and fraud and named several

additional defendants including Computer Sports World, Keith Glantz, and Russell Culver.

Defendant AP currently moves for summary judgment on plaintiff's copyright infringement claim and moves to dismiss the new claims of unfair competition, fraud, and violation of New York's consumer protection laws. Defendant AP also moves for Rule 11 sanctions. The other defendants have joined in the AP's present motions. In addition to opposing the AP's motions, plaintiff has cross-moved for Rule 11 sanctions against the AP.

Defendants challenge the copyright infringement claims arguing, on the merits, that the AP's pitching forms do not infringe upon the Kregos form as a matter of law. Specifically, defendants argue that the 1986 AP form is not substantially similar to the Kregos form, and was an independently created factual compilation. Defendants contend that plaintiff's infringement claims concerning its 1984 form are barred by the statute of limitations and no grounds exist to equitably toll the statute which expired for all infringements claims except those accruing after March 1986.

Defendants also contend that plaintiff's fraud claim should be dismissed for failure to show any reliance on the AP attorney's purported fraudulent communications, failure to plead fraud with particularity, and failure to raise the claim in a timely fashion. As to the unfair competition claims, defendants argue for dismissal based upon the law of the case, federal preemption, and failure to state a claim.

Plaintiff offers several responses. He contends that substantial similarity between the 1986 AP form and his own exists and that the statute of limitations should be tolled based upon the Office of Copyright Registration's delays and the defendants's fraudulent legal representations. Plaintiff further argues that his fraud and unfair competition claims, both adequately plead, should not be dismissed because they are neither barred by the law of the case nor preempted.

## II. DISCUSSION

### A. Copyright Infringement

Defendants seek summary judgment on plaintiff's claims of copyright infringement against both the 1986 and 1984 AP forms. The court can only grant summary judgment if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). As the moving parties, defendants carry the burden of demonstrating the absence of any material factual disputes. *Heyman v. Commerce & Industry Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975).

The court's function is not to resolve factual issues but simply to determine whether such issues exist. *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4 (2d Cir.1983). In making this determination, the court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party, here Kregos. *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985). Uncertainty regarding the true state of any material fact is enough to defeat a summary judgment motion. *United States v. One Tintoretto Painting*, 691 F.2d 603, 606 (2d Cir. 1982).

We shall first address the copyright infringement claims against the 1984 AP form. In its earlier opinion, the Court of Appeals noted that it "made no determination concerning the possible effect of the statute of limitations." *Kregos*, 937 F.2d at 710 n. 8. This issue has now stepped up to the judicial plate. Defendants argue that all infringement claims relating to the 1984 form are barred by the statute of limitations. Plaintiff responds that the statute should be equitably tolled.

The statute of limitations on copyright infringement claims is contained in 17 U.S.C. § 507(b) which states that "[n]o civil action shall be maintained under the provision of this title unless it is commenced within three years after the claim accrued." Plaintiff's original complaint was filed in March 1989. Therefore, defendants are correct that all infringement claims accru-

ing before March 1986 have struck out. This would include any claims against the 1984 AP form absent some reason to equitably toll the statute.

Essentially, plaintiff argues that the substantial identity between the 1984 and 1986 AP forms justifies treating them as a continuing infringement. This, argues plaintiff, tolls the statute of limitations for the 1984 form allowing it to relate back to the claims against the 1986 AP form. While we agree that a continuing infringement upon a copyrighted work could exist, we find that no continuing infringement can be shown in this case.

Although the alleged infringement by the 1986 AP form occurred within the three-year statute of limitations, the 1984 form's alleged infringement accrued more than three years ago. Even though the identity of the alleged infringer is the same and plaintiff claims that both AP forms infringe, this does not mean the claims in essence constitute a single continuing wrong.

The cases relied upon by plaintiff differ in significant respects. Without exception, they involved allegations of infringements concerning a single infringing work, not easily separable, that occurred both before and after the statute of limitations period had expired. *Woods Hole Oceanographic Institute v. Goldman*, 228 U.S.P.Q. 874, 1985 WL 5968 (S.D.N.Y.1985), involved a filmmaker's continuous attempts to assert ownership over a film created as part of a collaborative effort. *Id.* at 876. In *Taylor v. Meirick*, 712 F.2d 1112 (7th Cir.1983), the court determined that the initial act of copying and subsequent sales of those same infringing copies constituted a "continuing wrong." *Id.* at 1119.

This case would be more in line with *Taylor* if the AP had copied the Kregos form in 1984, used its copy for a short period of time, then two years later resumed use of its 1984 form. In that situation, both periods of infringement would relate to the same infringing work, and should be deemed a continuing infringement.

In the present case, though not separated by a significant span of time, the AP has created two distinct, identifiable forms that allegedly infringe upon Kregos' form. Even if there is found to be substantial identity between the AP's 1984 and 1986 forms, the wrong perpetrated by the 1984 form ended when the AP ceased its publication. The wrong associated with the 1986 form began upon its publication, which coincided with the cessation of the 1984 form's use. Plaintiff was fully aware of the 1984 form's publication and perfectly able to bring a separate infringement actions against each form upon its publication.

We follow the course set by the Second Circuit which gives full effect to 17 U.S.C. § 507(b)'s limitations allowing recovery only for those damages which accrued within the three-year period immediately preceding the commencement of suit. *See Mount v. Book-of-the-Month Club, Inc.,* 555 F.2d 1108, 1110–11 (2d Cir.1977); *Gaste v. Kaiserman,* 669 F.Supp. 583, 584 (S.D.N.Y.1987).

In a sense, both *Mount v. Book-of-the-Month Club* and *Gaste v. Kaiserman* involved facts much closer to a continuing wrong than this case. Both of these cases involved later sales of an allegedly infringing work that was originally created and sold more than three years before the complaint was filed.

■ Plaintiff also asks the court to equitably toll the three-year statute of limitations based upon the Copyright Office's administrative delay as well as certain representations made by the AP's attorney to Kregos and promises of additional work made by defendant Sports Features.

■ The copyright infringement statute of limitations may be equitably tolled if justified under the circumstances. *See Wood v. Santa Barbara Chamber of Commerce, Inc.,* 705 F.2d 1515 (9th Cir.1983), *cert. denied,* 465 U.S. 1081, 104 S.Ct. 1446, 79 L.Ed.2d 765 (1984). We have little difficulty holding that plaintiff was not entitled to rely upon the legal representations of the AP's attorney regarding the copyrightability of the pitching forms.

Relying upon the legal opinions of an attorney who represents the person plaintiff was accusing of illegally copying his form is beyond the pale of reasonableness. Even accepting plaintiff's replay of the event, this legal "wild pitch" will do nothing to advance plaintiff's case for tolling the statute of limitations.

■ Similarly, we do not view plaintiff's alleged continued reliance upon the representations of Sports Features as reasonable, meriting the tolling of the statute. According to plaintiff, he was denied additional work for the football and basketball seasons and given spurious excuses by Sports Features for some two years. Such prolonged acceptance seems without justification. Each failure to deliver additional work should have given plaintiff pause before further delaying action on his infringement claims.

Assuming what plaintiff alleges as true, it was unreasonable to continue to rely upon broken promises of work for some two years and only commence action against defendant Sports Features in 1989, some two years after the statute of limitations for 1984 AP form infringement claim expired and three years after Sports Features allegedly failed to give plaintiff the baseball form business in 1986. We decline to toll the statute of limitations under these circumstances.

■ We view plaintiff's claims of administrative delay as his strongest pitch. Before commencement of an action for copyright infringement, a person must register a copyright claim with the Copyright Office. 17 U.S.C. § 411(a). Indeed, "[r]eceipt of an actual Certificate of Registration or denial of same is a jurisdictional requirement." *Demetriades*, 680 F.Supp. at 661.

Plaintiff claims that institution of his suit was delayed two years pending the Copyright Office's action on his application. Defendants stress that any delays of plaintiff's application were a self-inflicted injury. In their view, plaintiff chose to wait until 1986 to file his application, despite notice that applications for software textual screen displays would be delayed, and yet opted against filing separate applications for the textual screen display and the underlying computer program.

Despite plaintiff's diligence in keeping abreast of the Copyright Office's progress on his application, we find no reason to toll the statute of limitations on his claims against the 1984 AP form. Plaintiff was forewarned that copyright applications involving screen displays would be delayed. That administrative delays created a statute of limitations problem was itself a self-induced problem. Had plaintiff not sat on his rights for so long, the Copyright Office's prolonged delay would have been avoided completely. We find no equitable reason to relieve plaintiff of the time constraints set by the statute of limitations. Consequently, we grant summary judgment in favor of the defendants on plaintiff's claims associated with the 1984 AP pitching form.

We now turn to the summary judgment motion as it relates to plaintiff's infringement claim for the 1986 AP form. Defendants argue that the 1986 AP pitching form does not infringe upon the Kregos form as a matter of law. Naturally, plaintiff disagrees. Both sides seek support for their arguments in the Second Circuit's earlier opinion reversing this court's decision on the copyrightability of the Kregos form.

■ To establish a copyright infringement, the copyright holder must show ownership of a copyright and that the alleged infringer copied the protected work. *See Rogers v. Koons*, 960 F.2d 301, 306 (2d Cir.1992) (citing *Weissmann v. Freeman*, 868 F.2d 1313, 1320 (2d Cir.), *cert. denied*, 493 U.S. 883, 110 S.Ct. 219, 107 L.Ed.2d 172 (1989)). Defendants do not take issue with plaintiff's ownership of a copyright for the Kregos pitching form. Plaintiff's infringement claim for the 1986 AP form thus turns on whether the AP copied the Kregos form. Because a copier is rarely caught in the act, copying is generally established by the proof of defendant's access and substantial similarity between the works. *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*, 558 F.2d 1090, 1092 (2d Cir.1977).

Substantial similarity is not synonymous with the copying of every last detail. The core question is whether "the average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Ideal Toy Corp. v. Fab–Lu Ltd.*, 360 F.2d 1021, 1022 (2d Cir.1966).

Defendants contend that the Kregos pitching form represents a factual compilation with only a limited number of possibilities of expression. Where only limited ways exist to express certain ideas, similarity alone cannot form the basis of an infringement claim. *See Decorative Aides Corp. v. Staple Sewing Aides Corp.*, 497 F.Supp. 154, 157 (S.D.N.Y.1980), *aff'd without op.*, 657 F.2d 262 (2d Cir.1981).

The Kregos pitching form, while itself a compilation of facts, was not simply one option out of a limited number of ways to express these facts. As the Court of Appeals stated:

> There are at least scores of available statistics about pitching performance available to be calculated from the underlying data and therefore thousands of combinations of data that a selector can choose to include in a pitching form.

*Kregos*, 937 F.2d at 704. Both the Court of Appeals and this court recognized that plaintiff's *arrangement* of pitching statistics—for example, the format of the columns and headings—represented a "garden-variety" pitching form, but a conclusion could not be reached as a matter of law that his *selection* of a combination of nine statistics from the universe of possible combinations of pitching statistics could not satisfy the creativity requirement for copyrightable expression. *Id.* at 705.

There is no dispute regarding defendants' access to the Kregos pitching form. It has been published in newspapers across the country since 1983 and the AP's Sports Editor was sent a copy in 1983. An internal AP memorandum dated April 3, 1984 also expressly discusses the Kregos form. The record supports only one possible conclusion, that the AP had access and actual knowledge of the Kregos form. Indeed, defendant AP has expressly admitted this in connection with its 1984 form while arguing its irrelevance given its statute of limitations position.

Substantial similarity is the central issue of plaintiff's infringement claim regarding the 1986 AP form. In general, the existence of substantial similarity is a factual issue. *Ideal Toy Corp.*, 360 F.2d at 1022. Defendants, for purposes of the current motion, admitted that its 1984 form was virtually identical to the Kregos form in both form and content. Defendant AP's Reply to Plaintiff Kregos' Statement of Material Facts at 3. The similarity between the Kregos form and the 1986 AP form, however, is a whole new ballgame. The AP vigorously disputes the legal similarity of its 1986 form to the Kregos form, claiming it is sufficiently different to shield the AP from an infringement claim. Essentially, defendants argue that the differences between the Kregos form and earlier pitching forms that made the Kregos form copyrightable are no greater than the differences between the 1986 AP form and the Kregos form.

The 1986 AP form and the Kregos form are not identical, differing in three respects. The 1986 form includes two categories not appearing in the Kregos form, "Team Record" and the team's season record for games started by that day's pitcher. The Kregos form also contains a set of statistics "VS OPP AT SITE" that includes the pitchers' won-loss record, number of innings pitched, and earned run average for the season when pitching against that day's opponent at the site of that day's game. The 1986 AP form compiles these three statistics into the broader category of "VS OPP" which is not limited to that day's site but includes a team's home and away games against the day's opponent.

Kregos argues that the "VS OPP AT SITE" and "VS OPP" categories are identical in some instances and therefore these categories are substantially similar. This is true at the beginning of the baseball season before two given teams have played each other at least once in each of their home fields. Kregos argues that changing two categories of pitching statistics represents only minor modifications leaving intact the substantial similarity between the

forms, or at least creates a material factual dispute over their substantial similarity.

Defendants respond that the issue of infringement was for all purposes decided by the Court of Appeals which stated that:

The reason for doubting that the AP's 1986 form infringes Kregos' form arises from the same consideration that supports Kregos' claim to a copyright. Kregos can obtain a copyright by displaying the requisite creativity in his selection of statistics. But if someone else displays the requisite creativity by making a selection that differs in more than a trivial degree, Kregos cannot complain. Kregos contends that the AP's 1986 form makes insignificant changes from its 1984 form. But Kregos cannot have it both ways. If his decision to select, in the category of performance against the opposing team, statistics for the pitcher's current season at the site of today's game displays, in combination with his other selections, enough creativity to merit copyright protection, then a competitor's decision to select in that same category performance statistics for the pitcher's season performance both home and away may well insulate the competitor from a claim of infringement. Thus, though issues remain to be explored before any determination can be made, it may well be that Kregos will have a valid claim only as to the AP's 1984 form.

*Kregos*, 937 F.2d at 710. The Court of Appeals did not expressly decide this issue, noting issues in the case that remained unexplored. The implication of the court's reasoning is readily apparent. The degree of added creativity that supports the copyrightability of Kregos' pitching form differs little from the additional creativity needed to shield defendants' form from an infringement claim.

While several forms predating the Kregos form contained certain of plaintiff's categories, no single pitching form that predated the Kregos form contained more than three of the nine categories of pitching statistics included in the Kregos form. As an aside, we note that most of Kregos' categories already existed in one or another existing forms. The Court of Appeals held that Kregos' degree of variation from existing forms could not constitute differences of only a trivial degree. *Id.* at 705.

Here, the 1986 AP form contains two statistics totally absent from the Kregos form, the team's won-loss record for the season and the team's won-loss record for the season when that day's pitcher has started the game. As we noted, the other major difference is Kregos' use of three statistics for the pitcher's season performance against the day's opponent at the day's site as compared to the AP's use of these three statistics against the day's opponent at any site. In total, of the ten performance statistics compiled in the 1986 AP form, five are different from those used in the Kregos form.

The question becomes, does fifty percent similarity equate to substantial similarity? The Court of Appeal expressed its sense that the degree of differences that enabled Kregos to copyright his pitching form might similarly shield the AP from an infringement claim. Courts have noted in copyright infringement cases that determining whether substantial similarity exists between competing works is a question often subject to resolution as a matter of law, particularly when the court holds as a matter of law that the similarity between the works is insubstantial. *See, e.g., Walker v. Time Life Films, Inc.*, 784 F.2d 44, 48 (2d Cir.1986); *Wickham v. Knoxville International Energy Exposition, Inc.*, 739 F.2d 1094 (6th Cir.1984); *See v. Durang*, 711 F.2d 141 (9th Cir.1983).

We reach a similar conclusion in this case. The AP's addition of two categories not present in the Kregos form together with the alteration of a set of three statistics leaves the 1986 AP form with five statistics not present in the Kregos form. No reasonable person could conclude that the inclusion of five different statistics out of the ten used by the 1986 AP form still leaves it substantially similar to the Kregos form.

■ Perhaps even more significantly, certain of the differences that exist between the 1986 AP form and the Kregos

form bear on the copyrightable portions of the Kregos form. Summary judgment is permitted "where there is an obvious lack of similarity between the copyrightable elements of the plaintiff's expression of a given idea and the defendant's expression of the same idea." *Black v. Gosdin,* 740 F.Supp. 1288, 1291 (M.D.Tenn 1990) (interpreting a 2nd Circuit case concerning summary judgment on copyright claims).

In large part, the creativity of the Kregos form serving as the foundation for its copyrightability rested on the plaintiff's creation of a general category of "VS OPP AT SITE," a category of statistics never before used. This is precisely the set of statistics that the 1986 AP form has changed. In its place, the AP uses the broader category of "VS OPP," a category that includes all games between the day's teams started by the day's pitchers.

Further, the appropriateness of resolving the issue of substantial similarity on summary judgment has been discussed in this circuit. In *Warner Bros., Inc. v. American Broadcasting Companies, Inc.,* 720 F.2d 231 (2d Cir.1983), the court noted that:

> [t]he 'substantial similarity' that supports an inference of copying sufficient to establish infringement of a copyright is not a concept familiar to the public at large. It is a term to be used in a courtroom to strike a delicate balance between the protection to which authors are entitled under an act of Congress and the freedom that exists for all others to create their works outside the area protected against infringement.

720 F.2d at 245. The 1986 AP form contains five categories of statistics not found in the Kregos form. The Kregos form contained six categories of statistics not found together in any earlier forms. The balance we strike in this case, alluded to by the Court of Appeals, protects defendants against an infringement claim when the differences between their form and plaintiff's pitching form involve the very elements that made the Kregos form copyrightable.

"[A] court may compare the two works and render a judgment for the defendant on the ground that as a matter of law a trier of fact would not be permitted to find substantial similarity." *Wickham,* 739 F.2d at 1097. We do so here and hold that no substantial similarity exists between the Kregos form and the 1986 AP form. Consequently, we grant defendants' summary judgment on the copyright claims associated with the 1986 AP form.[1]

### B. Common Law Fraud

Defendants seek dismissal of plaintiff's claims of common law fraud on the grounds that the complaint fails to state a cause of action. The crux of plaintiff's fraud claims is his significant delays in commencing this infringement action were due in part to his reliance upon misrepresentations made by the AP's attorney and promises made by Sports Features.

The elements of common law fraud under New York law are a material, false representation, an intent to defraud thereby, and reasonable reliance on the representation, causing damage to the plaintiff. *Katara v. D.E. Jones Commodities, Inc.,* 835 F.2d 966, 970–71 (2d Cir.1987); *Roso v. Saxon Energy Corp.,* 758 F.Supp. 164, 168 (S.D.N.Y.1991).

In this case, we do not find that any actionable fraud has been committed by the AP. In September 1986, plaintiff advised defendants of his intention to file an action for infringement after his copyright registration was received. Plaintiff, who was unrepresented at the time, claims that he was convinced by the AP's attorney of the uncopyrightability of a pitching form. Even so, plaintiff had no reasonable right as a matter of law to rely upon legal opinions offered by the AP, an entity occupying an adversarial position by this point. As a result, we dismiss plaintiff's claim of common law fraud against the AP.

Plaintiff also states a fraud claim against defendant Sports Features stemming from alleged representations promis-

---

**1.** Were we not to grant summary judgment on the defendants' motions, we do not know of any factual issues to be tried that would bear on the substantial similarity of the works.

ing additional work in return for plaintiff's agreement not to pursue his infringement claims. In plaintiff's view, Sports Feature's promises, excuses for delay, and failure to offer plaintiff further work continued through 1986, and constituted a fraud on plaintiff.

Sports Features denies making any promises of additional work to plaintiff. Sports Features, joining in the AP's arguments in opposition, also argues that plaintiff's fraud claims are time-barred. Under New York law, a claim of common law fraud must be brought within six years from accrual or two years from discovery, whichever period is longer. *See* N.Y.Civ. Prac.L. & R. §§ 203(f) and 213 subd. 8; *see also IIT, International Invest. Trust v. Cornfeld,* 619 F.2d 909, 928–29 (2d Cir. 1980).

In response, plaintiff contends that the fraud perpetrated by Sports Features was of a continuing nature, lasting until at least August 1986 when Sports Features terminated the use of the Kregos pitching form in the Chicago Sunday [Sun] Times. Whether Sports Features had fraudulently promised additional work to forestall an infringement suit threatened by Kregos is a disputed material fact that cannot be resolved on the record as a matter of law.

Sports Features assumes that the fraud claim accrued in 1984, at the same time plaintiff's fraud claim against the AP accrued. Sports Features apparently misconstrues plaintiff's claims against it; plaintiff' fraud claims against the AP and Sports Features are distinct. Kregos contends that Sports Features made a series of fraudulent statements, all intended to delay the legal action threatened by plaintiff. According to plaintiff, the final fraudulent act occurred in 1986 when defendant failed to use his baseball form.

If Sports Features made such representations with the intent of delaying Kregos' proposed legal action, the series of excuses and promises might constitute a continuing fraud, at least for a year or two until it became apparent that no work would be forthcoming. Each statement allegedly made by defendant was purportedly made

with a single object in mind, to stay Kregos' hand. As a result, plaintiff's cause of action for fraud would accrue each time Sports Features promised additional work and failed to deliver.

If true, plaintiff's fraud claim accrued in 1986 and plaintiff filed his amended complaint alleging fraud in August 1990. Applying the six-year statute of limitations from the point of accrual, plaintiff's fraud claim against Sports Features would not be time-barred. However, to claim fraud plaintiff must also show damages. Although factual issues exist concerning continuing nature of Sports Feature's alleged fraud, these are immaterial given the lack of damages to plaintiff.

The purported fraud by Sports Features did not prevent the court from reaching the merits of plaintiff's claims concerning the 1986 AP form. Our holding on this claim stands independent of any promises allegedly made by Sports Features or the AP. The only conceivable damages plaintiff could claim is that the fraudulent representations made by Sports Features prevented plaintiff from commencing a copyright infringement action for the 1984 AP form before the three-year statute of limitations expired.

Plaintiff has not stated an independent claim of fraud but merely reformed one of his arguments offered for tolling the three-year statute of limitations for one of his copyright claims, an argument we have already found unconvincing. Moreover, the crux of plaintiff's argument regarding Sports Features' fraudulent promises sounds more in contract than in fraud. Essentially, plaintiff is arguing that he orally agreed not to pursue his infringement claims in exchange for additional work which Sports Features promised to provide. Even if true, this would appear to state (inadequately however) a claim for breach of contract rather than a fraud claim. Since plaintiff has not adequately pled fraud and has not stated a claim in contract considering the Statute of Frauds, we dismiss plaintiff's fraud claim against Sports Features.

## C. Unfair Competition

The third claim asserted by Kregos is a claim of unfair competition under New York law. Defendants argue that the Court of Appeal's dismissal of plaintiff's Lanham Act claims bars plaintiff from reformulating its unfair competition claims under New York common law. Additionally, defendants argue that the unfair competition claim is preempted under 17 U.S.C. § 301 and generally fails to state a claim upon which relief can be granted.

■■■ Defendants correctly note that the standards for § 43(a) claims under the Lanham Act and unfair competition claims under New York law are virtually the same. *E.R. Squibb & Sons v. Cooper Laboratories, Inc.*, 536 F.Supp. 523, 526 (S.D.N.Y. 1982). The essence of both causes of action is the likelihood that the public will be confused as to the source of the allegedly infringing product. *Id.; see also Olay Co. v. Cocacare, Inc.*, 218 U.S.P.Q. 1028, 1036 (S.D.N.Y.1983) (citing *Harlequin Enterprises, Ltd. v. Gulf & Western Corp*, 644 F.2d 946 (2d Cir.1981)).

Plaintiff responds that the standard applied by the Court of Appeals to his Lanham Act claim differs from the standard under New York law for unfair competition claims. Thus, says plaintiff, the law of the case does not bar his unfair competition cause of action. Plaintiff reads the decision of the Court of Appeals to mean that more than simply the application of a false copyright notice is required to constitute a Lanham Act violation.

We do not share plaintiff's interpretation of the Court of Appeals decision. The circuit court did not hold that an express claim of originality is required to sufficiently plead a claim for false copyright notice. The Court of Appeals stated that the Sports Features' copyright notice neither claims originality "nor does the notice contain *any* representation that is false." *Kregos*, 937 F.2d at 711 (emphasis added). In short, the court held that a copyright notice must contain *some* falsity beyond simply the falsity of infringement in order to support plaintiff's Lanham Act claim. Otherwise, all copyright infringement claims could automatically be converted in Lanham Act violations. *Id.*

■■■ Defendants also argue that plaintiff's unfair competition claims are preempted by 17 U.S.C. § 301 which states in part that:

all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright ... whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a). All parties agree that under § 301, a state cause of action is preempted by federal copyright laws if the subject matter of the state law rights falls within the subject matter of the copyright laws and the state law rights asserted are equivalent to the exclusive rights protected by the federal copyright laws. *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 723 F.2d 195, 200 (2d Cir.1983), *rev'd on other grounds*, 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985).

"A state right is equivalent to copyright if the state right 'is infringed by the mere act(s) of reproduction, performance, distribution or display.'" *Universal City Studios, Inc. v. The T–Shirt Gallery, Ltd.*, 634 F.Supp. 1468, 1474 (S.D.N.Y.1986) (quoting *Mayer v. Josiah Wedgwood & Sons, Ltd.*, 601 F.Supp. 1523, 1535 (S.D.N.Y.1985)). Where a state law violation requires an extra qualitative element beyond these acts, preemption is inapplicable. *Universal City*, 634 F.Supp. at 1475.

■■■ Plaintiff contends that proof of his unfair competition claim requires more than simply acts of reproduction, performance, distribution, or display. His unfair competition claim challenges defendants' false designation of authorship of a copied work. According to plaintiff, this requires

proof of an additional element, use of a false copyright notice since the only way to falsely designate the authorship of Kregos' pitching form, because the form is not accompanied by the creator's name, is to attach a false copyright notice.

We disagree. The mere reproduction of Kregos' form by the AP, without any signature or false copyright notice or any outward sign of ownership, could itself support a state claim for false designation of ownership. The appearance of a pitching form in a newspaper's sports page, if not expressly attributing the work to someone else, implies that the form was the creation of a person on the newspaper's staff. The AP's mere act of reproducing the Kregos form could support an unfair competition claim for false designation of ownership. Plaintiff's state claim for unfair competition, as it is asserted in this case at least, is equivalent to copyright and therefore federal copyright law provides the exclusive avenue of relief. Plaintiff's unfair competition claim is preempted pursuant to 17 U.S.C. § 301.

In addition, we note that given our holding that no substantial similarity exists between the 1986 AP form and the Kregos pitching form, plaintiff's claim for unfair competition must correspondingly fail.

To conclude, we grant defendants' motion for summary judgment on the copyright claims and grant defendants' motions to dismiss plaintiff's claims of fraud and unfair competition. Lastly, while we have found plaintiff's arguments largely unpersuasive, we do not view them as frivolous or sanctionable. As a result, we deny defendants' motion for Rule 11 sanctions. The Clerk will enter judgment for the defendants.

SO ORDERED.