3 F.3d 656
 1993 Copr.L.Dec. P 27,142, 27 U.S.P.Q.2d 1881
 George L. KREGOS, doing business as American Sports Wire,
Plaintiff-Appellant,
v.
The ASSOCIATED PRESS, Defendant,
Sports Feature Syndicate, Inc.; Computer Sports World;
Keith Glantz; Russell Culver, Defendants-Appellees.
 No. 619, Docket 92-7735.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 4, 1993.
Decided Sept. 1, 1993.
 
 Mark P. Stone, Stamford, CT, for plaintiff-appellant.
 Nicholas L. Coch, New York City (Shea & Gould, New York City, of counsel), for defendant-appellee Associated Press.
 Norman E. Lehrer, Cherry Hill, NJ (Perla M. Kuhn, Kuhn & Muller, New York City, of counsel), for defendants-appellees Sports Feature Syndicate, Computer Sports World, Glantz, and Culver.
 Before: PRATT and MAHONEY, Circuit Judges, and ROBERT C. ZAMPANO, District Judge for the United States District Court of Connecticut, sitting by designation.
 GEORGE C. PRATT, Circuit Judge:
 
 
 1
 Plaintiff-appellant George Kregos ("Kregos") appeals from a judgment entered in the United States District Court for the Southern District of New York, Gerard L. Goettel, Judge, that granted defendants' motion for summary judgment and dismissed Kregos's claims of copyright infringement, fraud, and unfair competition. This is the fourth reported opinion in this action. In the first decision the district court concluded that Kregos's pitching forms were not copyrightable. Kregos v. Associated Press, 731 F.Supp. 113 (S.D.N.Y.1990) ("Kregos I "). On appeal, we held that remand was necessary, principally to determine whether Kregos's selection of pitching statistics reflected sufficient originality to be copyrightable as a compilation. Kregos v. Associated Press, 937 F.2d 700 (2d Cir.1991) ("Kregos II "). Kregos now appeals from the district court's post-remand decision, which held that the Kregos and AP pitching forms were not "substantially similar". Kregos v. Associated Press, 795 F.Supp. 1325 (S.D.N.Y.1992) ("Kregos III ").
 
 BACKGROUND
 
 2
 Since the facts of this case are comprehensively reported in Kregos I, we briefly summarize here only those facts relevant and necessary to this appeal. Since 1983 Kregos, doing business as American Sports Wire, has provided a number of newspapers across the country with his selection of statistics on baseball pitchers arranged into what are known in the business as "pitching forms". The forms are of interest to avid fans and gamblers, because by comparing the performances of the pitchers in an upcoming game they provide a basis for predicting the winner. Examples of the forms may be found in the appendices to Judge Goettel's 1990 opinion. Kregos I, 731 F.Supp. at 122-24. In late 1983, Kregos sent to the Associated Press ("AP") a copy of his form, seeking syndication; AP, however, rejected it. In 1984, AP made available to its subscribers for the first time a pitching form created by its own writers ("1984 form"); AP's form was "nearly identical" to the Kregos form. Kregos III, 795 F.Supp. at 1327. An internal AP memo stated that in creating its form, AP writers had consulted "various other forms including the [Kregos] form, but [had] used them only as examples." Id. at 1328.
 
 
 3
 In 1986, AP revised its pitching form ("1986 form"), making three relevant changes to its earlier 1984 form. See Kregos I, 731 F.Supp. at 115. First, the AP's 1986 form added a new category, "TEAM REC", a category that represented the team's record in games started by the particular pitcher during the current season. Id. Second, while the AP and Kregos forms both contained a category detailing the pitchers' records--wins, losses, innings pitched, and earned-run average--the Kregos form specified this record only for games played at the site of the upcoming game, whereas AP's 1986 form presented that information for all games played against that opponent. AP's third change was to include in the "VS OPP" (against this opponent) category only the current season's information, not the career statistics provided by the Kregos and 1984 AP forms. Id.
 
 
 4
 When Kregos first accused AP of unlawfully using his form in 1984, Kregos III, 795 F.Supp. at 1328, AP lawyers misinformed him that the form was not copyrightable. Kregos conceded that he felt this advice was incorrect, but he waited until June of 1985 to seek copyright protection both for his form and for the computer software he had developed to create it. Id. Kregos's application for copyright registration was not approved until December 1988 due to newly enacted legislation regarding copyright applications for computer-screen displays. Id.
 
 
 5
 A. 1990 District Court Opinion: Kregos I.
 
 
 6
 Kregos commenced this copyright and trademark infringement action in March 1989 against both AP and its supplier of baseball statistics and pitching forms, Sports Features Syndicate, Inc. ("Sports Features"), claiming that both the 1984 and the 1986 pitching forms directly infringed his works. Kregos I, 731 F.Supp. at 116.
 
 
 7
 Holding that Kregos's pitching form was not copyrightable, the district court granted summary judgment to AP and dismissed Kregos's claims. Judge Goettel additionally held that Kregos's forms were "functional" and thus not protected by trademark laws. Id. at 121-22 (construing Lanham Trademark Act, Sec. 43(a), 15 U.S.C. Sec. 1125(a)). Granting protection to the form itself "would preclude any other supplier from publishing an authentic pitching form." Id. at 121. Further, any curtailing of the right to use the general categories used by Kregos, namely, wins, losses, innings pitched, and earned-run average, would exact a "substantial limitation on competition." Kregos I, 731 F.Supp. at 122.
 
 
 8
 B. First Appeal: Kregos II.
 
 
 9
 On appeal, we remanded the case to the district court for further proceedings to determine whether Kregos had displayed enough selectivity to satisfy the requirement that his work be original. Kregos II, 937 F.2d at 710. We held that the validity of Kregos's compilation copyright could not be rejected for lacking, as a matter of law, the requisite originality and creativity. We also held that Kregos's forms did not evince a merger of idea and expression, because the potentially relevant data about pitching were numerous, and there were numerous means of expressing the idea of rating pitchers' performances. We further held that the district court erred in holding the "blank form" doctrine barred copyright in this case, because Kregos's forms, unlike check stubs, or a blank diary, convey information. See Kregos II, 937 F.2d at 708. We affirmed the district court's dismissal of Kregos's claims under Sec. 43(a) of the Lanham Trade-Mark Act, 15 U.S.C. Sec. 1125(a).
 
 
 10
 C. District Court's Opinion after Remand: Kregos III.
 
 
 11
 After the remand, the district court permitted Kregos to file an amended complaint. Kregos III, 795 F.Supp. at 1328. In addition to copyright infringement, Kregos asserted claims under New York law for unfair competition and fraud. He also named additional defendants, Computer Sports World, Keith Glantz, and Russell Culver, in claims of contributory infringement.
 
 
 12
 On defendants' motions, the district court dismissed the amended complaint. Id. at 1337. On the copyright-infringement claims, the court granted summary judgment as to the 1984 form, because the action was time-barred, id. at 1330-31, and, as to the 1986 form, because there was no substantial similarity between Kregos's form and the AP form. Id. at 1334. The court dismissed the common-law fraud claims because Kregos did not establish the requisite elements under New York law. Kregos III, 795 F.Supp. at 1334-35. Finally, the court dismissed the unfair-competition claim, because it was preempted by federal law. Id. at 1336-37.
 
 We affirm.DISCUSSION
 
 13
 A. The Copyright-Infringement Claims.
 
 
 14
 The district court on remand granted summary judgment in favor of AP on Kregos's copyright-infringement claims relating to both the 1984 form and 1986 forms. Summary judgment under Fed.R.Civ.P. 56(c) is appropriate only if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." The moving party has the burden of demonstrating the absence of any material factual dispute, and the court must make all reasonable inferences in favor of the nonmoving party. Heyman v. Commerce & Industry, 524 F.2d 1317, 1320 (2d Cir.1975); Anderson v. Liberty Lobby, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). We review a grant of summary judgment de novo. Healy v. Rich Products Corp., 981 F.2d 68, 72 (2d Cir.1992).
 
 
 15
 1. The 1984 Form.
 
 
 16
 A copyright-infringement action requires the copyright owner to prove copying of a copyrighted work by an infringer. See Weissmann v. Freeman, 868 F.2d 1313, 1320 (2d Cir.), cert. denied, 493 U.S. 883, 110 S.Ct. 219, 107 L.Ed.2d 172 (1989). However, such an action must be commenced within three years after the claim accrued. 17 U.S.C. Sec. 507(b); see also Mount v. Book-of-the-Month Club, Inc, 555 F.2d 1108, 1110-11 (2d Cir.1977); Gaste v. Kaiserman, 669 F.Supp. 583, 584 (S.D.N.Y.1987). While AP used its 1984 form until October 1985, Kregos did not initiate suit until March 1989. Thus, Kregos's claim for infringement by the 1984 form was filed at least five months late.
 
 
 17
 Kregos, however, requested the district court to exercise its equitable discretion to toll the statute of limitations on three grounds--fraudulent inducement, administrative delay, and continuous infringement; the court declined.
 
 
 18
 a. Fraudulent Inducement.
 
 
 19
 Kregos stated that when he confronted AP about using his pitching form in 1984, an AP attorney informed him that the form was not copyrightable and that he had no legal claims against AP. Kregos also stated that AP's supplier of forms, Sports Features, fraudulently induced his delay in filing suit by telling him that his lawsuit would injure the health of the mother of the president of Sports Features, and that dropping all legal action would prompt Sports Features to find additional work for Kregos. No additional work materialized, and Kregos claims that these misrepresentations induced him to delay legal action until 1989.
 
 
 20
 A decision whether to equitably toll a statute of limitations is left to the sound discretion of the district court, and should not be disturbed absent an abuse of that discretion. Banner Indus. v. Central States Pension Fund, 875 F.2d 1285, 1294 (7th Cir.1989); Ohio v. Peterson, Lowry, Rall, Barber & Ross, 651 F.2d 687, 693-94 (10th Cir.1981). We find no abuse of discretion here.
 
 
 21
 The district court did not err in refusing to toll the limitations period simply because of Kregos's claimed reliance on AP's counsel, who stated that the forms were not protectible in copyright. Kregos could have easily sought another opinion, and relying on the legal opinion of another's attorney is unreasonable when both parties are aware adverse interests are being pursued. See, e.g., Royal American Managers, Inc. v. IRC Holding Corp., 885 F.2d 1011, 1016 (2d Cir.1989) (in securities-misrepresentation case, unreasonable to rely on adversary's interpretation of New York statute); MWS Wire Indus. v. California Fine Wire Co., 797 F.2d 799, 802-03 (9th Cir.1986) (plaintiffs' reliance on adversary's representation of strength of their legal claim in reaching settlement agreement not grounds to rescind settlement contract). Moreover, Kregos discovered the statements were false as early as 1986, well before the statute of limitations had run its course. Kregos III, 795 F.Supp. at 1335.
 
 
 22
 Kregos argues that equitable tolling is also warranted due to Sports Features false representation that it would send more work to Kregos if he delayed suit. We cannot conclude that the district court abused its discretion by holding Kregos's continued reliance on these empty promises was unreasonable and without justification. Id. at 1331.b. Administrative Delay.
 
 
 23
 Kregos's second ground for equitable tolling was based upon administrative delay by the copyright office in approving his copyright registration, which he claims prevented him from bringing suit sooner. The district court rejected this ground largely because Kregos was aware that AP had printed a "virtually identical" pitching form daily throughout the entire 1984 season and much of the 1985 season, yet he did not apply for copyright registration until June 25, 1985, and December 29, 1986. Kregos III, 795 F.Supp. at 1328. Had plaintiff sought a copyright registration earlier, the two-year delay would not have mattered; we see no abuse of discretion.
 
 
 24
 c. Continuing Infringement.
 
 
 25
 Kregos's third claim for tolling was based on the continuous-infringement doctrine. Kregos claims the infringement was continuous because of the similarities between the 1984 and 1986 forms. The district court rejected this theory, holding that the 1984 form and the 1986 form were two separate works. We agree.
 
 
 26
 Kregos's reliance on Taylor v. Meirick, 712 F.2d 1112 (7th Cir.1983) and Woods Hole Oceanographic Institute v. Goldman, 228 U.S.P.Q. 874, 1985 WL 5968 (S.D.N.Y.1985) is misplaced. In Taylor, plaintiff distributed maps of three Illinois lakes for fishermen; the maps were copyrighted in 1974. Defendant copied the maps without authorization in 1976 or 1977 and then sold them. Plaintiff brought suit in 1980, four years after the statute of limitations had begun to run. The seventh circuit tolled the three-year limitation period based on a theory that the infringement was continuing; it reasoned that the initial copying was not a separate and completed wrong, but simply the first step in a course of wrongful conduct. Id. at 1119.
 
 
 27
 In Woods, a workstudy student wrongly asserted copyright ownership of a research film he had created for his employer. Following the decision in Taylor, the district court permitted the claim, holding that the statute of limitations "is triggered by the last infringing act of a continuing wrong". The student had continuously asserted ownership of the film, and the action was brought well within three years from the date of the last act of infringement.
 
 
 28
 The continuing-infringement doctrine elaborated in Woods and Taylor is both inapplicable on these facts and unavailable in this circuit. Factually, Woods and Taylor are distinguishable from our case; as the district court noted, each involved a "single infringing work, not easily separable, that occurred both before and after the statute of limitations period had expired." Kregos III, 795 F.Supp. at 1330. In contrast, the AP's 1986 form is significantly different from its 1984 form, as we later discuss. In addition, our recent decision in Stone v. Williams, 970 F.2d 1043 (2d Cir.1992), pointed out the disfavor that the continuing-infringement doctrine has received in the copyright-infringement context. We held in Stone that when infringements occur during the limitations period, recovery may not be had for the earlier infringements; rather, "[r]ecovery is allowed only for those acts occurring within three years of suit". Id. at 1049-50.
 
 
 29
 In sum, we conclude that the district court correctly rejected the tolling claims and found Kregos's copyright-infringement claims against all defendants regarding the 1984 form to be time-barred.
 
 
 30
 2. The 1986 Form.
 
 
 31
 Since Kregos's infringement claims relating to the 1986 form fall within the three-year statute of limitations, we must address those claims on their merits. In order to make out a copyright-infringement claim, Kregos must establish that AP or Sports Features copied his 1986 form. See, e.g., Weissmann, 868 F.2d at 1320. Since direct evidence of copying is rarely possible, copying is generally established by showing (a) that the defendant had access to the copyrighted work and (b) the substantial similarity of protectible material in the two works. Walker v. Time Life Films, Inc., 784 F.2d 44, 48 (2d Cir.), cert. denied, 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 721 (1986); Novelty Textile Mills v. Joan Fabrics Corp., 558 F.2d 1090, 1092 (2d Cir.1977); Arnstein v. Porter, 154 F.2d 464, 468 (2d Cir.1946).a. Access.
 
 
 32
 Because Kregos's forms have been published in newspapers since 1983, AP clearly had access to them. Moreover, Kregos in 1983 had sent AP a copy of his form, hoping for syndication, and AP admitted to using his form as a model for its virtually identical 1984 form.
 
 
 33
 b. Substantial Similarity.
 
 
 34
 The critical issue, therefore, is whether the Kregos form and AP's 1986 form are substantially similar. The district court held that they were not. Kregos III, 795 F.Supp. at 1333-34. To determine whether the grant of summary judgment was proper, we must decide whether the lack of substantial similarity between the protectible aspects of the works was "so clear as to fall outside the range of disputed fact questions" requiring resolution at trial. Walker, 784 F.2d at 48. Summary judgment may be appropriate when the similarity between the competing works concerns only " 'non-copyrightable elements of the plaintiff's work,' " or when "no reasonable jury, properly instructed, could find that the two works are substantially similar". Warner Bros. v. American Broadcasting Cos., 720 F.2d 231, 240 (2d Cir.1983) (emphasis in original; citations omitted).
 
 
 35
 In holding that Kregos's pitching form is entitled to copyright protection, we stated in Kregos II that a factual compilation capable of being expressed only in a limited number of ways is afforded only limited protection. Kregos II, 937 F.2d at 704, 710; see Feist Publications, Inc. v. Rural Telephone Serv. Co., 499 U.S. 340, ----, 111 S.Ct. 1282, 1290, 113 L.Ed.2d 358 (1991). Protection is limited because of a principle fundamental to copyright law: a copyright does not protect an idea, but only the expression of an idea. Baker v. Selden, 101 U.S. 99, 103, 25 L.Ed. 841 (1879); Mazer v. Stein, 347 U.S. 201, 217-18, 74 S.Ct. 460, 470-71, 98 L.Ed. 630. To the extent the expression merges with the idea, the merger doctrine precludes protection of that expression. Kregos II, 937 F.2d at 705. We earlier held that the relevant idea in this case was "to publish an outcome predictive pitching form". Kregos II, 937 F.2d at 706. Kregos effectuated or expressed that idea with his selection of specific pitching statistics. Because there are a variety of selections that Kregos could have chosen for his form to render it in some way outcome predictive, we held in Kregos II that no merger occurred here. Id. at 707.
 
 
 36
 The panel in Kregos II expressed doubts, however, about whether Kregos could establish infringement by AP's 1986 form, because Kregos's copyright protection is limited to the particular selections he made, and while Kregos can obtain a copyright by displaying the requisite creativity in his selection of statistics, * * * if someone else displays the requisite creativity by making a selection that differs in more than a trivial degree, Kregos cannot complain.
 
 
 37
 Kregos II, 937 F.2d at 710.
 
 
 38
 AP's 1986 form differs from Kregos's form by far more than a "trivial degree". The Kregos form lists 9 statistics which measured (i) the pitcher's season record, including won-lost ("W-L") and earned run average ("ERA"); (ii) the pitcher's record versus the opponent at the site of the game, including W-L, ERA, and innings pitched ("IP"), and (iii) the pitcher's record in the last three starts, including W-L, ERA, and IP, and the average hits and walks for nine innings, which Kregos called MBA (men on base average).
 
 
 39
 The 1986 AP form lists 10 statistics which measured (i) the pitcher's season record, including W-L and ERA; (ii) the team's W-L record against all opponents when that pitcher started; (iii) the pitcher's record versus the opponent including W-L, IP, and ERA; and (iv) the pitcher's record for his last three starts including W-L, IP, ERA, and what AP called AHWG, the average hits and walks per nine innings. Kregos's MBA and AP's AHWG categories thus report the same information under different titles.
 
 
 40
 Six of the ten statistics on these two forms are identical: (1) season W-L, (2) season E.R.A., (3) last three starts W-L, (4) last three starts IP, (5) last three starts E.R.A., and (6) last three starts MBA or AHWG. The 1986 AP form differs, however, from the Kregos form in three ways. First, the second major category of statistics regarding the pitcher's ability against the scheduled opponent, a category common to both forms, is calculated differently by each. The Kregos form is more specific, labeling the category "vs. team at site" and listing the W-L, IP, and ERA applicable for previous games against the opponent played at the site where the next game is scheduled. In contrast, the AP form calculates these statistics under the label "VS OPP" from the games played against the scheduled opponent, regardless of where those games were played. Second, in the 1986 form, AP limits the statistics provided in the "VS OPP" category to the current season; the Kregos form lists the pitcher'scareer statistics. The third difference is probably the most significant: the 1986 AP form includes a completely new category of statistics labeled "TEAM REC"; the legend to the form tells us that this lists the "[t]eam's record in games started by today's pitcher."
 
 
 41
 These three AP alterations mean that four of AP's ten statistics are different from those calculated on the Kregos form: (1) the team's W-L record when that pitcher started (not present on the Kregos form), and the pitcher's (2) W-L, (3) IP, and (4) ERA records versus the opponent.
 
 
 42
 Kregos contends that AP's change to listing the pitcher's record "vs. opp", rather than his "vs. team at site" is insignificant, because W-L, IP, and ERA figures therein may, at certain points in the season, be identical. A statistic is defined by the parameters set for measurement by the research. Unquestionably, the pitcher's record "at site" is different from his record "vs. opp"; the fact that the numbers in these two categories may occasionally coincide does not change the fact that the categories measure different, albeit overlapping, occurrence data. Stated differently, Kregos's copyright does not extend to the compiled facts, i.e., the actual numbers, but only to the original selection of which facts to compile. Feist, 499 U.S. at ----, 111 S.Ct. at 1287.
 
 
 43
 We do note that the district court erroneously considered the 1986 form to be different from the Kregos form in one additional way; it interpreted the AP's new "TEAM REC." category to include both the total team record for the season and, what it did actually contain, the team record for games started by that day's pitcher. The district court stated, "The 1986 form includes two categories not appearing in the Kregos form, 'Team Record' and the team's season record for games started by that day's pitcher." Kregos III, 795 F.Supp. at 1332. The court later repeated the error, stating, "the 1986 AP form contains two statistics totally absent from the Kregos form, the team's won-loss record for the season and the team's won-loss record for the season when that day's pitcher has started the game". Id. at 1333. The effect of this error, however, merely caused the district court to conclude that the 1986 AP form contained five out of ten different statistics, when in fact, four out of ten are different. Whether the differences represent 50% or 40%, one thing is clear: the degree of difference is not "trivial."
 
 
 44
 Thus, despite this small error, these forms were not substantially similar as a matter of law. As we suspected in Kregos II, much of the similarity between the AP and Kregos forms is necessitated because there are a limited number of statistics generally considered outcome-predictive by those familiar with the sport.
 
 
 45
 In short, because the forms are not substantially similar, defendants cannot be liable for copyright infringement.
 
 
 46
 B. Common Law Fraud.
 
 
 47
 Plaintiff also makes common-law fraud claims under New York law against both AP and Sports Features. These claims mirror his arguments for equitable tolling, and are equally unpersuasive. Against AP, he claims that but for the false statements made by AP's attorney that his pitching form was not copyrightable, Kregos would have applied for a copyright sooner, would have received it earlier, and hence, would have brought his infringement claim based on the 1984 form within the period of limitations. Kregos's fraud claim against Sports Features rests on two acts. First, Kregos claims that Sports Features promised him employment in return for not pursuing legal action in this matter, but such work never followed. Secondly, the president of Sports Features, Ronald Sataloff, represented to Kregos that Sataloff's mother was "seriously ill", and that any "lawsuit commenced by Kregos would kill her."
 
 
 48
 The district court held that the AP was entitled to summary judgment on this claim, because Kregos had no reasonable right as a matter of law to rely upon legal opinions offered by the AP, "an entity occupying an adversarial position" when it made the allegedly fraudulent statement. Kregos III, 795 F.Supp. at 1334. We affirm. To prove common-law fraud, a plaintiff must show (1) that there was a material, false representation, (2) made with knowledge of its falsity, and (3) an intent to defraud (4) that plaintiff reasonably relies upon, (5) causing the plaintiff damage. Diduck v. Kaszycki & Sons Contractors, Inc., 974 F.2d 270, 274 (2d Cir.1992). As we noted earlier in the discussion of Kregos's claim for equitable tolling, it is unreasonable for one to rely on the advice of an adversary's counsel to the extent when both parties are aware that adverse interests are being pursued. See, e.g., Royal American Managers, 885 F.2d at 1011; MWS Wire Indus., 797 F.2d at 799. Without reasonable reliance, there is no fraud.
 
 
 49
 The district court also rejected the fraud claims against Sports Features, concluding that Kregos failed to establish that the misrepresentations had caused him a direct and proximate injury. Here, also, we agree. New York law awards only "out-of-pocket" expenses in fraud cases, entitling plaintiffs to damages solely for their actual pecuniary losses. Dress Shirt Sales, Inc. v. Hotel Martinique, 12 N.Y.2d 339, 239 N.Y.S.2d 660, 662-64, 190 N.E.2d 10, 12 (1963); Raymond Corp. v. Coopers & Lybrand, 105 A.D.2d 926, 482 N.Y.S.2d 377, 379 (1984). Those losses must be the direct, immediate, and proximate result of the misrepresentation. Goldberg v. Mallinckrodt, Inc., 792 F.2d 305, 307 (2d Cir.1986). The damages must also be independent of other causes. Bennett v. United States Trust Co., 770 F.2d 308, 316 (2d Cir.1985).
 
 
 50
 As Judge Goettel stated, "the only conceivable damages plaintiff could claim is that the fraudulent representations made by Sports Features prevented plaintiff from commencing a copyright infringement action for the 1984 AP form before the three-year statute of limitations expired." Kregos III, 795 F.2d at 1335. In essence, under New York law, Kregos claims damage that is too remote; we are not permitted to speculate what potential award he might have obtained from winning a copyright case against Sports Features. See, e.g., Lehman v. Dow Jones & Co., 783 F.2d 285 (2d Cir.1986) (speculative claim such as loss of "finder's fee" not recoverable in fraud); Gouldsbury v. Dan's Supreme Supermarket, Inc., 154 A.D.2d 509, 546 N.Y.S.2d 379 (1989) (damages from potential court claim too remote to be recoverable in fraud action).
 
 
 51
 The district court correctly dismissed Kregos's common-law fraud claim against both AP and Sports Features.
 
 
 52
 C. Unfair Competition.
 
 
 53
 Upon remand from our prior decision that dismissed Kregos's claims under Sec. 43(a) of the Lanham act, Kregos amended his complaint to state a claim of unfair competition for false designation of origin under New York statutory and common law. Kregos III, 795 F.Supp. at 1328. His amended complaint stated that the publication and distribution of the copied form bearing a copyright notice in the name of Sports Features "intentionally misrepresents the authorship of the form distributed by 'AP', and constitutes deceptive acts and practices under Section 349 of the New York General Business Law and false advertising under Sections 350, 350-a and 350-e of the New York General Business law."
 
 
 54
 The district court held that (1) the action was preempted by 17 U.S.C. Sec. 301 of the copyright law, and (2) in any event, the state-law claim for unfair competition must fail, because the Kregos and 1986 AP forms were not substantially similar. Kregos III, 795 F.Supp. at 1337. We affirm on both grounds.
 
 
 55
 Kregos contends that his claim of unfair competition is not preempted, because it requires proof of an "extra element" beyond that required for federal copyright infringement. A state cause of action is preempted by federal copyright laws if the subject matter of the state-law right falls within the subject matter of the copyright laws and the state-law right asserted is equivalent to the exclusive rights protected by federal copyright law. Harper & Row, Publishers, Inc. v. Nation Enterprises, 723 F.2d 195, 200 (2d Cir.1983), rev'd on other grounds, 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985). No preemption occurs if: [A]n "extra element" is "required instead of or in addition to the acts of reproduction, performance, distribution or display,
 
 
 56
 in order to constitute a state-created cause of action," then[,] the right does not lie 'within the general scope of copyright'. A state law claim is not preempted if the "extra element" changes the "nature of the action so that it is qualitatively different from a copyright infringement claim." Computer Assocs. Int'l v. Altai, Inc., 982 F.2d 693, 716 (2d Cir.1992) (citations omitted and emphasis in original).
 
 
 57
 The court in Computer Assocs. then noted that application of this "extra element" test has led to holdings that Sec. 301 preempts unfair competition and misappropriation claims grounded solely in the copying of a plaintiff's protected expression. Id. at 717. In contrast, unfair-competition claims based upon breaches of confidential relationships, breaches of fiduciary duties and trade secrets have been held to satisfy the extra-element test and avoid Sec. 301 preclusion.
 
 
 58
 The district court was correct to locate Kregos's unfair-competition claim in the former, preempted category; as Kregos has formulated his pleadings, the claim contains no element to qualitatively differentiate it from those areas protected by copyright. Kregos contended that the extra element that differentiated his case from copyright was a false designation of ownership that arose from defendant's use of the form with false copyright information. The district court properly rejected this somewhat convoluted argument by noting that the copyright on AP's 1986 form was not an element of his claim; Kregos could have established a false designation of ownership by the defendants in "the mere reproduction of Kregos' form by the AP, without any signature of false copyright notice of any outward sign of ownership". Kregos III, 795 F.Supp. at 1337.
 
 
 59
 This body of law, however, does not support Kregos's position. The common law of unfair competition in New York requires proof of no element that is in excess of those elements necessary to establish a copyright-infringement action. Kregos's unfair-competition and misappropriation claims, based solely on the copying of the protected expression in his forms, are preempted by Sec. 301. Computer Assocs., 982 F.2d at 4766. In this case, the state unfair-competition claim is equivalent to copyright:
 
 
 60
 The mere reproduction of Kregos' form by the AP, without any signature of false copyright notice of any outward sign of ownership, could itself support a state claim for false designation of ownership. The appearance of a pitching form in a newspaper's sports page, if not expressly attributing the work to someone else, implies that the form was the creation of a person on the newspaper's staff. Kregos III, 795 F.Supp. at 1337.
 
 
 61
 Kregos's state-law right, therefore, falls within the subject matter of the copyright laws and is accordingly preempted.
 
 
 62
 D. Contributory Infringement.
 
 
 63
 In the amended complaint, Kregos advanced additional claims of contributory infringement against Computer Sports World, Russell Culver, and Keith Glantz, all of whom supply statistical data for Sports Features. Because these parties were not named in the original complaint but were added in late August 1991, the district court did not err in dismissing the actions brought against these defendants as being barred by the statute of limitations.
 
 CONCLUSION
 
 64
 We have considered all of the arguments advanced by Kregos on this appeal and conclude that none of them has merit. Accordingly, the judgment of the district court is affirmed.