**LONE WOLF McQUADE ASSOCIATES, Plaintiff,**

v.

**CBS INC., Top Kick Products, Inc., and Chuck Norris, Defendants.**

**ORION PICTURES CORP., Plaintiff,**

v.

**LONE WOLF McQUADE ASSOCIATES, Defendant.**

No. 95 Civ. 0998(JGK).

United States District Court, S.D. New York.

April 10, 1997.

Jeffery L. Rosenberg, Rosenberg & Fein, New York City, for Plaintiff Lone Wolf McQuade Associates.

Robert G. Sugarman, Marcia S. Cohen, Weil Gotshal & Manges, New York City, for Defendants CBS, Inc., Top Kick Productions, Inc., Chuck Norris.

## OPINION AND ORDER

KOELTL, District Judge:

This is an action by the plaintiff, Lone Wolf McQuade Associates ("McQuade Associates"), arising out of rights held by the plaintiff relating to the 1983 motion picture "Lone Wolf McQuade." The central issue in this case is whether the popular television series "Walker, Texas Ranger" violates the plaintiff's rights in the movie "Lone Wolf McQuade."

On or about February 14, 1995, the plaintiff brought suit against defendant CBS, Inc. ("CBS") alleging that "Walker, Texas Rang-er" violates its rights relating to "Lone Wolf McQuade" pursuant to the Copyright Act of 1976, 17 U.S.C. §§ 101 et seq., Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and New York unfair competition and misappropriation law. In June, 1995, Orion Pictures Corporation ("Orion") intervened as a party plaintiff. Orion alleged, among other things, that CBS, Top Kick Productions, Inc. ("Top Kick"), and Chuck Norris (collectively, the "defendants") infringed its copyright rights in "Lone Wolf McQuade."[1] On or about May 24, 1996, McQuade Associates filed a Second Amended Complaint in which it asserted the same claims against Top Kick and Chuck Norris as it had previously asserted against CBS.

In a settlement agreement dated December 9, 1996, Orion granted CBS a retroactive license from January 1, 1990, in perpetuity to use "Lone Wolf McQuade" in connection with the television series, "Walker, Texas Ranger." On December 17, 1996, the Court so ordered a stipulation dismissing with prejudice all claims by Orion against the defendants.[2] Only plaintiff McQuade Associates is now pursuing its claims against the defendants.

The defendants[3] now move for summary judgment pursuant to Fed.R.Civ.P. 56 dismissing the majority of plaintiff McQuade Associates' claims[4] on several grounds. First, the defendants move to dismiss the copyright claims on the grounds that "Lone Wolf McQuade" and "Walker, Texas Ranger" are not substantially similar in their protectable expression. Second, the defendants assert that the copyright claims should be dismissed because Orion granted CBS a retroactive license to use "Lone Wolf McQuade" in connection with the television series "Walker, Texas Ranger." Third, the defendants argue that the plaintiff's misappropria-

---

1. Orion also asserted an infringement and interference with copyright claim and a breach of contract claim against McQuade Associates.

2. Orion's claims against McQuade Associates have not been dismissed and are not the subject of any pending motion.

3. Plaintiff McQuade Associates' Second Amended Complaint, which added Top Kick and Chuck Norris as defendants, was filed after the parties submitted their motion papers. However, the Court will treat defendant CBS's arguments as though they have been asserted by all the defendants.

4. The defendants do not move to dismiss the plaintiff's claims for false designations of origin and false and misleading representations in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

tion and unfair competition claims should be dismissed because they are preempted by the Copyright Act of 1976 and because they are precluded by CBS's retroactive license. The plaintiff also cross-moves for summary judgment on the copyright claim.

## I.

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs. Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir.1994). "The trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Id.*, 22 F.3d at 1224.

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrates[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. The substantive law governing the case will identify those facts which are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *see also Gallo*, 22 F.3d at 1223.

If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). With respect to the issues on which summary judgment is sought, if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir.1994).

## II.

There is no genuine dispute with respect to the following material facts. Pursuant to an agreement dated May 11, 1982 (the "1818 Agreement"), 1818 Productions, Inc. ("1818 Productions") transferred, sold, and assigned to Orion certain rights and interests with respect the motion picture "Lone Wolf McQuade." Produced and released in 1983, "Lone Wolf McQuade" is an action-packed movie starring Chuck Norris as J.J. McQuade, a Texas Ranger who uses martial arts. The main plot of "Lone Wolf McQuade" involves a group of evil drug dealers who hijack an army convoy in order to obtain a huge supply of ammunition and high-power weapons. J.J. McQuade ultimately chases the villains to Mexico where they are holding his daughter hostage and defeats them in a final battle with a combination of bullets, grenades, and martial arts.

In an agreement dated March 22, 1983 (the "Purchase Agreement"), Orion conveyed to McQuade Associates "all right, title and interest in and to all copyrights in the Film" but expressly did not convey and reserved various rights including "any interest whatsoever in and to ... [a]ny television series rights, so-called television 'special' rights, remake or sequel rights, or any other ancillary rights and/or allied rights...." (Purchase Agreement at 1–2.) In the early 1990s, Orion discussed with CBS the possibility of a movie-of-the-week and television series based on "Lone Wolf McQuade," but an agreement never was reached regarding the proposal. (Orion Compl. ¶ 15; Answer to Orion Compl. ¶ 15.)

In or about 1993, CBS first broadcast "Walker: Texas Ranger, One Riot, One Ranger," a made-for-television movie star-

ring Chuck Norris as Cordell Walker, a Texas Ranger who uses martial arts. (2d Am.Compl.¶¶ 24–25.) The two main plots of the television movie involve a fifteen year old rape victim who is being stalked by her attackers and a paramilitary-type gang that plots to rob four banks simultaneously. Cordell Walker ultimately uses martial arts to capture the stalkers, and a combination of shotgun blasts and martial arts to defeat the bank robbers. The broadcast of the television movie was followed by a weekly television series entitled "Walker, Texas Ranger."[5] (2d Am.Compl.¶¶ 24–25.) In the television series, Cordell Walker continues to fight crime with a combination of guns and martial arts and the help of an assistant district attorney and a young minority partner.

### III.

■ The defendants first argue that summary judgment on the plaintiff's copyright claims is appropriate in this case because "Lone Wolf McQuade" and "Walker, Texas Ranger" are not substantially similar in their protectable expression. To succeed on a copyright infringement claim, a plaintiff with a valid copyright must prove that: (1) the plaintiff's work was actually copied by the defendant; and (2) the copying is illegal because there is a substantial similarity between the protectable material in the plaintiff's work and the defendant's work. *See, e.g., Fisher–Price, Inc. v. Well–Made Toy Mfg. Corp.*, 25 F.3d 119, 122–23 (2d Cir.1994). For the purpose of their motion, the defendants concede actual copying and do not dispute the validity of the copyright for "Lone Wolf McQuade."

■ In most cases, the test for substantial similarity is the ordinary observer test, which requires a determination whether the average lay observer would find that the defendant appropriated the alleged copy from the copyrighted work. See *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996,

1002 (2d Cir.1995); *Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 765–66 (2d Cir.1991). However, when a work contains both protectable and unprotectable elements, a court should apply the more discerning ordinary observer test by attempting to eliminate the unprotectable elements from consideration and comparing only the protectable elements for substantial similarity. *See Knitwaves*, 71 F.3d at 1002; *Folio Impressions*, 937 F.2d at 765–66; *Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 141 (2d Cir. 1992). As explained by the Court of Appeals for the Second Circuit:

> [T]he plaintiff must show that the defendant appropriated the plaintiff's particular means of expressing an idea, not merely that he expressed the same idea. The means of expression are the 'artistic' aspects of a work; the 'mechanical' or 'utilitarian' features are not protectible.... We focus on whether an ordinary lay observer would overlook the dissimilarities between the artistic (protectible) aspects of the two works and would conclude that one was copied from the other. Where, as here, we compare products that have both protectible and unprotectible elements, we must exclude comparison of the unprotectible elements from our application of the ordinary observer test.

*Fisher–Price*, 25 F.3d at 123 (citations omitted).

■ But the more discerning ordinary observer test still takes into account the work's "total concept and feel.'" *Knitwaves*, 71 F.3d at 1003 (quoting *Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d 498, 500 (2d Cir.1982)). The more discerning ordinary observer test does not stand for the broad proposition

> that, in comparing designs for copyright infringement, we are required to dissect [the two works] into their separate components, and compare only those elements which are in themselves copyrightable.... [I]f we took this argument to its logical

---

5. The defendants contend that the television movie or pilot was, in effect, the first episode of the series "Walker, Texas Ranger." This opinion will refer to the television movie "Walker, Texas Ranger, One Riot, One Ranger" and the television series "Walker, Texas Ranger" collectively as "Walker, Texas Ranger." The opinion will distinguish between the pilot and the television series where necessary.

conclusion, we might have to decide that "there can be no originality in a painting because all colors of paint have been used somewhere in the past."

*Knitwaves,* 71 F.3d at 1003 (quoting transcript of district court proceedings of Sept. 1, 1992, at 4); *see also M.H. Segan Ltd. Partnership v. Hasbro, Inc.,* 924 F.Supp. 512, 521 (S.D.N.Y.1996) ("Through *Knitwaves,* the Second Circuit has recently reconfirmed that the more discerning ordinary observer test is not an invitation to dissect a work into its constituent elements or features. The works as a whole must be compared to each other."). The author's original contributions are protectable including "the original way in which the author has 'selected, coordinated, and arranged' the elements of his or her work." *Knitwaves,* 71 F.3d at 1004 (quoting *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 358, 111 S.Ct. 1282, 1294, 113 L.Ed.2d 358 (1991)).

### A.

The defendants argue that "Lone Wolf McQuade" and "Walker, Texas Ranger" are not substantially similar as a matter of law because any similarities between the two works and the two main characters themselves involve only non-protectable elements. Although they do not dispute that the plaintiff's copyright in "Lone Wolf McQuade" extends to the character J.J. McQuade, the defendants contend that the similarities between J.J. McQuade and Cordell Walker simply reflect general themes, scenes a faire, and basic stock elements that can be found in many action adventure heros and are not protectable. *See Walker v. Time Life Films, Inc.,* 784 F.2d 44, 50 (2d Cir.), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 721 (1986); *Williams v. Crichton,* 84 F.3d 581, 587 (2d Cir.1996); *Warner Bros. Inc. v. American Broadcasting Cos., Inc.,* 654 F.2d 204, 208 (2d Cir.1981). In finding that the motion picture "Fort Apache: The Bronx" did not infringe on the book "Fort Apache," the Court of Appeals discounted numerous similarities based on the general experiences of police battling the hostile environment in the 41st Precinct in the Bronx:

These similarities therefore are unprotectible as "scenes a faire," that is, scenes that necessarily result from the choice of a setting or situation. Neither does copyright protection extend to copyright of "stock" themes commonly linked to a particular genre. Foot chases and the morale problems of policemen, not to mention the familiar figure of the Irish cop, are venerable and often-recurring themes of police fiction. As such, they are not copyrightable except to the extent they are given unique—and therefore protectible—expression in an original creation.

*Walker,* 784 F.2d at 50 (citation omitted).

The allegedly unprotectable similarities between J.J. McQuade and Cordell Walker include the following: both are mavericks who fight injustice, resist cooperation with the authorities and their direct superiors, and behave unconventionally; both are Texas Rangers; both use martial arts; both wear jeans and a casual shirt, with or without a vest, with an attached shield; both drive 4 X 4 off-road vehicles with lights on the roof; both have a partner of a minority ethnic group; and both are reluctant about taking on a young or inexperienced partner. The defendants support their argument with numerous clips of other action-packed adventures from the Lone Ranger with his faithful sidekick Tonto to more recent footage of Chuck Norris and other modern heroes battling villains with martial arts.

However, the plaintiff correctly argues that this Court should not engage in a detailed dissection of the character traits of J.J. McQuade and Cordell Walker. In *Warner Bros. Inc. v. American Broadcasting Cos., Inc.,* 720 F.2d 231 (2d Cir.1983), the Court of Appeals rejected the

defendants' mode of analysis whereby every skill the two characters share is dismissed as an idea rather than a protected form of expression. That approach risks elimination of any copyright protection for a character, unless the allegedly infringing character looks and behaves exactly like the original. A character is an aggregation of the particular talents and traits his creator selected for him. That each one may be an idea does not diminish the expressive aspect of the combination. But

just as similarity cannot be rejected by isolating as an idea each characteristic the characters have in common, it cannot be found when the total perception of all the ideas as expressed in each character is fundamentally different.

*Id.* at 243. Instead, the Court should determine "the total concept and feel" of the two characters and "the total concept and feel, theme, characters, plot, sequence, pace and setting" of the two works. *Williams,* 84 F.3d at 588. The *Warner Bros.* court instructed:

> Ultimately, care must be taken to draw the elusive distinction between a substantially similar character that infringes a copyrighted character despite slight differences in appearance, behavior, or traits, and a somewhat similar though non-infringing character whose appearance, behavior, or traits, and especially their combination, significantly differ from those of a copyrighted character, even though the second character is reminiscent of the first one. Stirring one's memory of a copyrighted character is not the same as appearing to be substantially similar to that character, and only the latter is infringement.

*Warner Bros.,* 720 F.2d at 242.

The plaintiff also contends that the character J.J. McQuade could also be considered a non-factual compilation of carefully selected character traits that constitutes a creative act protected by copyright. *See Feist Publications v. Rural Telephone Serv. Co., Inc.,* 499 U.S. 340, 356–59, 111 S.Ct. 1282, 1293–95, 113 L.Ed.2d 358 (1991); *Knitwaves,* 71 F.3d at 1003–04.

■ Whether J.J. McQuade is treated as a copyrightable character with an aggregation of particular talents and traits or a copyrightable non-factual compilation, the result is the same. A review of "Lone Wolf McQuade," "Walker: Texas Ranger, One Riot, One Ranger," and the series "Walker, Texas Ranger" confirms that there are numerous characteristics that are common to both J.J. McQuade and Cordell Walker that contribute to an overall perception of the characters and the works as similar. These similarities include the two characters' approaches to law enforcement, style, fighting

technique, characteristic behavior, and methods of operation as modern-day Texas Rangers, their portrayal by Chuck Norris, their attitudes toward authority and rules, and their style of attire and choice of vehicle. Viewing these works, a reasonable jury could conclude that an ordinary lay observer would view the characters J.J. McQuade and Cordell Walker and the works at issue as substantially similar. A reasonable jury could conclude that the total combination of all the traits of Cordell Walker are substantially similar to those of J.J. McQuade and not simply reminiscent of that character. *See M.H. Segan,* 924 F.Supp. at 521 (finding summary judgment inappropriate on the issue of substantial similarity between two toys, Big Frank and Frankenstuff).

**B.**

■ The defendants also assert that the differences between "Lone Wolf McQuade" and "Walker, Texas Ranger" are so profound that no reasonable juror could find that the total concept and feel of the works are substantially similar. The defendants argue that the differences overwhelm the similarities between the two characters. The defendants argue that J.J. McQuade and Cordell Walker are wholly dissimilar characters with different backgrounds, personalities, temperaments, attitudes, life experiences, family situations, living situations, and alliances; that their partners have completely different personalities and roles; that their relationships with their partners are different; that they dress differently and drive different off-road vehicles; that the works have a different tone and mood; and that the works seek to teach different messages regarding social consciousness, tolerance for differences, and the legal system.

A review of the works establishes that the alleged differences are in fact exaggerated. Whether, for example, J.J. McQuade typically wears dirty jeans and Cordell Walker generally wears clean jeans (except when he goes out into the field and battles in the dirt), and whether J.J. McQuade drives a mud splattered white Dodge Ram while Cordell Walker drives a clean blue or gray pick up

truck, are unlikely to detract from the substantial similarity of the characters. Similarly, the defendants can only argue that J.J. McQuade, as opposed to Cordell Walker, is not humorous, tender, or light-hearted by ignoring the scenes in which J.J. McQuade exhibits those characteristics and then ignoring the scenes in which Cordell Walker exhibits some of his more brutal martial arts.

In any event, as the Court of Appeals has instructed,

> [D]issimilarity between some aspects of the works will not automatically relieve the infringer of liability, for "no copier may defend the act of plagiarism by pointing out how much of the copy he has not pirated." It is only when the similarities between the protected elements of plaintiff's work and the allegedly infringing work are of "small import quantitatively or qualitatively" that the defendant will be found innocent of infringement.

*Williams,* 84 F.3d at 588 (citation omitted). A review of the characters and the works in their entirety confirms that the similarities between the works explained above are not of such "small import quantitatively or qualitatively" that this Court should hold as a matter of law that no reasonable trier of fact could find the works substantially similar.

Accordingly, because there are disputed issues of material fact regarding whether "Lone Wolf McQuade" and "Walker, Texas Ranger" are substantially similar, the plaintiff's copyright claims cannot be dismissed on this basis.

### IV.

The defendants' second alleged basis for summary judgment, which is advanced in their supplemental motion, is that the plaintiff has no copyright infringement claim because CBS obtained from Orion a retroactive license to use "Lone Wolf McQuade" in connection with the television series "Walker, Texas Ranger" from January 1, 1990, in perpetuity. The defendants contend that Orion had the authority to grant the license to CBS because under the Purchase Agreement, Orion retained the right to make a television

special and a television series based on "Lone Wolf McQuade."

■ In its opposition papers, the plaintiff advances four arguments why the CBS retroactive license is not valid. First, it contends that Orion had no right or authority to grant a retroactive license to CBS because Orion did not perform the conditions precedent to the effectiveness of its television rights contained in the 1818 Agreement.[6] The plaintiff argues that section 7.01(f) of the 1818 Agreement granted to Orion certain television and ancillary rights in "Lone Wolf McQuade"

> provided that the exercise of said television series and so-called "television special" rights shall be subject to the approval of Producer [1818 Productions], which approval shall not be unreasonably withheld and further that Orion and Producer shall negotiate in good faith with respect to the Producer rendering producing services with respect to such television series or "special" if Orion or Producer desires to have such services rendered by Producer.

(1818 Agreement § 7.01(f).) The plaintiff submits that affidavits of the two principal shareholders of 1818 Productions, Yoram Ben–Ami and Steven Carver, are extrinsic evidence that the grant of television and ancillary rights was subject to the condition precedent of prior approval of the producer, 1818 Productions. (Ben–Ami Aff. ¶ 3; Carver Aff. ¶ 3.) *See Hanson v. McCaw Cellular Communications, Inc.,* 77 F.3d 663, 667 (2d Cir.1996) (explaining that under California law, "even if a contract is integrated, parol evidence is admissible to explain the meaning of the contract, if the contract is ambiguous"). The plaintiff asserts that because Orion never sought the approval of 1818 Productions with respect to any television series rights, there is a question of fact as to whether any rights to make a television series ever vested in Orion and therefore whether Orion had the right to give a retroactive license to CBS.

However, the affidavits submitted by Mr. Ben–Ami and Mr. Carver only establish that the prior approval of 1818 Productions was not sought prior to the production of the

---

6. The 1818 Agreement is governed by California law. (1818 Agreement § 8.04.)

television special and series. The affidavits do not present any evidence that such prior approval was a condition precedent to the production of the television shows. If they made such a contention, it would be useless because it would contradict the unambiguous provisions of the 1818 Agreement. *See Hanson,* 77 F.3d at 669 ("If the parol evidence sets forth an interpretation of the contract to which the contract is 'reasonably susceptible,' it will compel a conclusion that the contract, even if seemingly clear on its face, is ambiguous, and that the parol evidence should be fully admitted. But '[i]f the evidence offered would not persuade a reasonable man that that instrument meant anything other than the ordinary meaning of its words, it is useless.' ") (quoting *Blumenfeld v. R.H. Macy & Co.,* 92 Cal.App.3d 38, 45, 154 Cal.Rptr. 652, 656 (1979) (quotations and citations omitted)). The plaintiff's argument that the grant of television and ancillary rights was a conditional grant ignores section 7.01(a) of the 1818 Agreement, which provides in relevant part:

> It is agreed that upon the completion and delivery of the Picture ["Lone Wolf"], Orion shall own and Producer shall and does hereby sell and assign, transfer and convey to Orion, all right, title and interest of whatsoever kind and nature in and to the Picture, all parts and properties thereof and therefrom, all television series rights, so-called "television specials" rights, remake and sequel rights and any and all other ancillary and allied rights (including, without limitation, theatrical stage rights) in and to the Picture and the Property, together with all the copyrights (and extensions and renewals thereof) in and to each and all of the foregoing and all negative and positive film materials of the Picture, and all other tangible and intangible rights, properties and proceeds in and to each and all the foregoing whether now in existence or hereafter arising. It is expressly acknowledged and agreed that no references herein to any rights (whether under copyright or otherwise) being granted to Orion shall in any way be deemed to affect or alter the ownership rights granted and agreed to be granted to

Orion in the immediately preceding sentence.

(1818 Agreement § 7.01.) § 7.01(a) thus unconditionally grants Orion, among other things, "all television series rights" and "television special rights" and makes clear that no other references in the agreement "affect or alter" the rights so granted. Section 7.01(f), on which the plaintiff relies, is such a reference. Moreover, "[c]onditions precedent are not favored in the law, and courts shall not construe a term of the contract so as to establish a condition precedent absent plain and unambiguous contract language to that effect." *Frankel v. Board of Dental Examiners,* 46 Cal.App.4th 534, 550, 54 Cal.Rptr.2d 128, 137–38 (1996); *see also In re Marriage of Hasso,* 229 Cal.App.3d 1174, 1181, 280 Cal.Rptr. 919, 923 (1991); *Helzel v. Superior Court of Alameda County,* 123 Cal.App.3d 652, 663, 176 Cal.Rptr. 740, 745–46 (1981).

Because the requirement in § 7.01(f) that Orion obtain the approval of the Producer and negotiate in good faith with respect to its television rights is a covenant rather than a condition precedent, any breach of § 7.01(f) by Orion does not result in a loss of its television series rights. Instead, a breach of § 7.01(f) gives 1818 Productions the right to sue for damages. Section 3.02 of the 1818 Agreement makes this clear:

> *Default by Orion:* If Orion shall breach this Agreement ... Producer shall have the right to proceed against Orion for the monies due or for damages including reasonable attorneys fees. In no event, however, shall Producer have the right to terminate or rescind this Agreement *nor shall the rights acquired by Orion under this Agreement be subject to revocation, termination or diminution, by reason of any failure or breach of any kind on the part of Orion.* In no event shall Producer be entitled to an injunction to restrain any breach by Orion of any provision of this Agreement, or the distribution, sale, licensing, leasing or exhibition of the Picture or the exercise of any other rights herein granted to Distributor, it being agreed that *the only remedy of the Producer in any such event shall be an action for an accounting or for damages, subject to the*

*provisions of this Agreement with respect thereto.*

(1818 Agreement § 3.02 (emphasis added).) Thus, 1818 Productions' only recourse for "any failure or breach of any kind" by Orion "shall be an action for an accounting or for damages." *See Fosson v. Palace (Waterland), Ltd.,* 78 F.3d 1448, 1455 (9th Cir.1996) ("[I]n California '[a] clear and unambiguous contractual provision providing for an exclusive remedy for breach will be enforced.'") (quoting *Price Dev. Co. v. Redevelopment Agency,* 852 F.2d 1123, 1127 (9th Cir.1988)).

■ Second, the plaintiff argues that the CBS retroactive license is not valid because Orion's right to make and/or authorize others to make a television special or television series extends only to "free" television and not to pay or cable television. The plaintiff contends that the Purchase Agreement, under which Orion retained "[a]ny television series rights, so-called television 'special' rights, remake or sequel rights, or any other ancillary rights and/or allied rights (including, without limitation, theatrical stage rights)," (Purchase Agreement at 2), defines "television" as "'free' television," (Purchase Agreement at 4), and that the reference to "[a]ny television series rights" retained by Orion refers only to television series rights with respect to "free" television. However, the plain language of the Purchase Agreement contradicts this interpretation. The Purchase Agreement defines the term "'television' rights," not the term "television," and defines it in the section that discusses the television rights in the film "Lone Wolf McQuade" conveyed to the plaintiff, (Purchase Agreement at 2–4), rather than in the section that discusses the television series rights retained by Orion, (Purchase Agreement at 1–2). The section that discusses the television series rights and television special rights retained

by Orion does not limit these rights to "free" television.[7]

■ Third, the plaintiff argues that the Court's prior decision denying Orion's motion for summary judgment is the law of the case and precludes summary judgment for defendants on the copyright claim because of the ambiguities in the Purchase Agreement. "The 'law of the case' doctrine posits that if a court decides a rule of law, that decision should continue to govern in subsequent stages of the same case." *Sagendorf–Teal v. County of Rensselaer,* 100 F.3d 270, 277 (2d Cir.1996). The law of the case is discretionary and does not prevent reconsideration prior to final judgment. *See id.* In any event, the issue decided on the prior motion—whether Orion had exclusive standing to sue defendants for copyright infringement—is different from the issue on this motion—whether Orion retained the right to make a television series based on "Lone Wolf McQuade." Accordingly, the "law of the case" does not bar the Court's decision on this motion.

■ Fourth, the plaintiff argues that Orion's retroactive license in favor of CBS does not cure any infringement that occurred prior to the date of the grant of the license. However, a retroactive license can cure past infringements. *See SBK Catalogue Partnership v. Orion Pictures Corp.,* 723 F.Supp. 1053, 1059 (D.N.J.1989) (referring to the court's prior decision in which it found "that the Partnership was entirely within its rights to grant a retroactive license to the Orion defendants and that an authorization from one joint copyright owner is an effective defense to an infringement action brought by another joint owner"); *cf. Hanson PLC v. Metro–Goldwyn–Mayer Inc.,* 932 F.Supp. 104, 105–06 (S.D.N.Y.1996) (describing coun-

---

**7.** The plaintiff relies on the section of the Agreement that deals with the plaintiff's rights to the film "Lone Wolf McQuade" including the "'theatrical' rights, 'non-theatrical' rights, and 'television' rights in the Film...." Although "'television' rights" are defined to include "free" television in that section, the term "'theatrical' rights" is defined to include rights in the film in connection with any and all forms of pay, cable, and/or closed circuit television.

Even if those definitions were transposed, as the plaintiff incorrectly argues, to the section of the Agreement in which Orion retained its rights to any "television series rights, so-called television 'special' rights, remake or sequel rights, or any other ancillary rights and/or allied rights (including without limitation, theatrical stage rights)," then Orion would retain its rights to make a television series for cable through its retention of theatrical stage rights.

sel's efforts to avoid copyright litigation by negotiating a retroactive license).

■ Accordingly, because CBS obtained a valid retroactive license to use "Lone Wolf McQuade" in connection with its television special and its television series "Walker, Texas Ranger," the defendants' motion to dismiss the plaintiff's copyright claims involving the broadcast of those works on "free," pay, and cable television is granted.

■ At oral argument the plaintiff also argued that, even if the retroactive license to CBS is valid, it did not apply to the plaintiff's copyright claims that involve allegations that the television movie "Walker: Texas Ranger, One Riot, One Ranger" has been sold on videotape in stores and has been shown in movie theaters. (Tr. of Hr'g at 27–29.) In its Second Amended Complaint, the plaintiff alleges that "CBS, and others in concert … has facilitated, and will continue to facilitate, videotape rentals and/or sales of the Made–for–TV Movie and/or the Infringing Works." (2d Am.Compl.¶ 31.) At oral argument, the defendants asserted that Orion has the right to sell videocassettes of the television movie pursuant to the Purchase Agreement. (Tr. of Hr'g at 40.) However, this issue has not been briefed by either party and it would be inappropriate to dispose of it without the opportunity for all parties to brief it. Accordingly, the defendants' motion to dismiss the plaintiff's copyright claims involving allegations of videotape rentals and/or sales of the television movie and/or the television series is denied without prejudice.

## V.

The defendants argue that the plaintiff's misappropriation and unfair competition claims should be dismissed because they are preempted by the Copyright Act of 1976 and because they are precluded by CBS's retroactive license. With respect to. the defendants' preemption argument, the Copyright Act expressly provides that "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 … are governed exclusively by [the Copyright Act]." 17 U.S.C. § 301(a). This preemption of state law is limited by section 301(b), which provides that "[n]othing in this title annuls or limits any rights or remedies under the common law or statutes of any ·State with respect to … activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106.…" 17 U.S.C. § 301(b)(3). The Copyright Act grants copyright holders the exclusive right "(1) to reproduce the copyrighted work …; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies … of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; (4) … to perform the copyrighted work publicly; and (5) … to display the copyrighted work publicly." 17 U.S.C. § 106.

■ "A state cause of action is preempted by federal copyright laws if the subject matter of the state-law right falls within the subject matter of the copyright laws and the state-law right asserted is equivalent to the exclusive rights protected by federal copyright law." *Kregos v. Associated Press,* 3 F.3d 656, 666 (2d Cir.1993), *cert. denied,* 510 U.S. 1112, 114 S.Ct. 1056, 127 L.Ed.2d 376 (1994); *see also National Basketball Ass'n v. Motorola, Inc.,* 105 F.3d 841, 848 (2d Cir.1997); *Harper & Row, Publishers, Inc. v. Nation Enters.,* 723 F.2d 195, 199–200 (2d Cir.1983), *rev'd on other grounds,* 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985). There is no preemption if " '[a]n extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action.… A state law claim is not preempted if the extra element changes the nature of the action so that it is qualitatively different from a copyright infringement claim." *Kregos,* 3 F.3d at 666 (quoting *Computer Assocs. Int'l v. Altai, Inc.,* 982 F.2d 693, 716 (2d Cir.1992) (citations omitted)) (internal quotations omitted); *see also National Basketball Ass'n,* 105 F.3d at 850. The Court of Appeals has determined that section 301

preempts unfair competition and misappropriation claims under New York law that are based on the copying of a plaintiff's protected expression because they fail the extra element test. *See Kregos,* 3 F.3d at 666; *Warner Bros.,* 720 F.2d at 247; *Kisch v. Ammirati & Puris Inc.,* 657 F.Supp. 380, 385 (S.D.N.Y.1987). However, state law unfair competition claims that allege the tort of "passing off" or confusion as to source are not preempted because they do not entail the assertion of rights equivalent to those protected by federal copyright law. *See Warner,* 720 F.2d at 247; *Kisch,* 657 F.Supp. at 385.

In this case, the plaintiff does not contest the fact that the Copyright Act preempts its misappropriation claim and unfair competition claim based on copying. However, the plaintiff asserts that its unfair competition claim is based primarily on passing off and confusion as to source and therefore is not preempted. In its Second Amended Complaint, the plaintiff alleges:

> Defendants' publication, republication, commercialization, marketing and sale of the Infringing Works creates the false and misleading impression that the Infringing Works, and the main character therein, are affiliated with [the plaintiff] and/or ["Lone Wolf McQuade"], and/or confuses the public audience as to such source.... Defendants' activities are likely to cause confusion or mistake, or to deceive consumers into thinking that CBS's Infringing Works and the main character therein are sponsored, licensed or otherwise authorized by, or affiliated, connected or otherwise associated with [the plaintiff] and ["Lone Wolf McQuade"] and the title character therein.

(2d Am.Compl.¶¶ 37–38.) The scope of this claim has not been developed on this motion. Although the defendants argue that CBS's retroactive license precludes the plaintiff's unfair competition claim, the parties have not yet briefed the issue of whether Orion received the right in the 1818 Agreement to "pass off" its works as sponsored by or affiliated with "Lone Wolf McQuade" or whether Orion retained that right in the Purchase Agreement and it would be inappropriate to dispose of that issue without the opportunity for all parties to brief it and present any relevant evidence. The plaintiff's unfair competition and misappropriation claims, like their copyright claims, are therefore precluded except to the extent that the unfair competition claim is based on confusion as to source.

Accordingly, the defendants' motion to dismiss the plaintiff's misappropriation claim is granted. The defendants' motion to dismiss the plaintiff's unfair competition claim is granted except to the extent that it is based on confusion as to source.

## VI.

The plaintiff also invites the Court to search the record and determine that the plaintiff is entitled to summary judgment as a matter of law on its copyright infringement claim because no reasonable juror could fail to conclude that "Lone Wolf McQuade" and "Walker, Texas Ranger" are substantially similar. However, the defendants correctly argue that they conceded copying only for purposes of their motion for summary judgment in order to test the substantial similarity of the works. They have not otherwise conceded, nor has the plaintiff shown, that there are no genuine issues of fact with respect to copying. Moreover, although there are definite similarities between the two works, whether these similarities rise to the level of substantial similarity is a disputed issue of material fact that cannot be resolved upon this motion. Accordingly, the plaintiff's motion for summary judgment on its copyright claim is denied.

## CONCLUSION

For the reasons explained above, the defendants' motion to dismiss the plaintiffs' copyright claims is **granted** except with respect to allegations based on the rental or sale of videotapes of "Walker, Texas Ranger." The defendants' motion to dismiss the plaintiff's misappropriation claim is **granted**. The defendants' motion to dismiss the plaintiff's unfair competition claim is granted except to the extent that it is based on confusion as to source. The plaintiff's motion for

summary judgment on its copyright claims is **denied.**

**SO ORDERED.**