**STEPHEN & HAYES CONSTRUCTION, INC., Plaintiff,**

v.

**MEADOWBROOK HOMES, INC., Defendant.**

No. 97 C 4053.

United States District Court, N.D. Illinois, Eastern Division.

Jan. 5, 1998.

Patricia Mary Fennell, Joseph Patrick Berglund, Stanley E. Niew, Kathleen I. Niew, Niew & Associates, P.C., Oakbrook, IL, for Plaintiff.

Travis Gary Maisel, Jay Stephen Dobrutsky, Moore & Maisel, Chicago, IL, Martin A. Kanofsky, Joseph R. Ramos, Anne M. O'Brien, Merlo, Kanofsky & Brinkmeier, Ltd., Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

This matter is before the court on defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and, alternatively, defendant's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

The motion is granted in part and denied in part.

### I. BACKGROUND

Both parties are designers and builders of residential homes. Plaintiff Stephen & Hayes Construction Inc. ("Stephen & Hayes") alleges that defendant Meadowbrook Homes Inc. ("Meadowbrook") misappropriated and/or copied Stephen & Hayes' plans, drawings, styles, concepts, and/or products for particular homes without permission. Specifically, Stephen & Hayes alleges that Meadowbrook built, promoted, and sold homes substantially similar to Stephen & Hayes' homes; Meadowbrook's promotional literature is virtually identical to Stephen & Hayes' literature; and Meadowbrook directed potential home buyers interested in particular homes who could not view these completed homes to view particular homes built by Stephen & Hayes because the Meadowbrook and Stephen & Hayes' homes were identical.

Consequently, Stephen & Hayes filed a four count complaint[1] premised on: count I—copyright infringement, 17 U.S.C. § 101, et seq.; count II—Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), 815 ILCS 510/1, et seq.; count III—unfair competition; and count IV—unjust enrichment.

Meadowbrook seeks dismissal or, alternatively, judgment in its favor as to counts II, III, and IV.

### II. MOTION TO DISMISS— LEGAL STANDARD

In ruling on a motion to dismiss, the Court "must accept well pleaded allegations of the complaint as true. In addition, the Court must view these allegations in the light most favorable to the plaintiff." *Gomez v. Illinois State Board of Education*, 811 F.2d 1030, 1039 (7th Cir.1987). Although a complaint is not required to contain a detailed outline of the claim's basis, it nevertheless "must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985). Dismissal is not granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957).

### III. DISCUSSION

Meadowbrook presents one argument as to why counts II (UDTPA), III (unfair competition), and IV (unjust enrichment) should be dismissed: the Copyright Act—count I is

---

1. The complaint has been amended on three occasions. This opinion concerns the third amended complaint.

premised on copyright infringement—preempts the related state law claims. This is not an easy issue, but, the court does not believe counts II or III are preempted based on the posture of this case. The court finds that count IV is preempted. Following a brief summary of the Copyright Act, the court will analyze separately each of the disputed counts.

### A. *The Copyright Act*

■ To establish copyright infringement, the plaintiff must prove that he owns a valid copyright and that the defendant "copied" the constituent elements of the work that are original.[2] *See Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.,* 499 U.S. 340, 363, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358 (1991). Generally speaking, the Copyright Act protects certain works of authorship from being reproduced, distributed publicly, performed, or displayed publicly. *See* 17 U.S.C. § 106. Literary works, musical works, dramatic works, pantomimes and choreographic works, pictorial, graphic, and sculptural works, motion pictures and other audiovisual works, sound recordings, and architectural works may qualify for copyright protection. *See* 17 U.S.C. § 102(a). The Copyright Act extends to the authors of such copyrightable works "a right against the world," *ProCD, Inc. v. Zeidenberg,* 86 F.3d 1447, 1454 (7th Cir. 1996), "to reap the rewards of their endeavors." *Baltimore Orioles, Inc. v. Major League Baseball Players Association,* 805 F.2d 663, 678 (7th Cir.1986), *cert. denied,* 480 U.S. 941, 107 S.Ct. 1593, 94 L.Ed.2d 782 (1987).

■ The Copyright Act preempts:

> all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by § 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that

date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any state.

17 U.S.C. § 301. This means that a claim premised on the infringement of a right provided by state law is preempted by the Copyright Act if (1) the work in which the right is asserted is fixed in tangible form and comes within the subject matter of copyrightable works as specified in § 102[3] and (2) the right is equivalent to any of the rights protected by the Copyright Act as specified in § 106. *See Baltimore Orioles,* 805 F.2d at 676. Regarding the second requirement, a right is equivalent to a right protected by the Copyright Act if (a) it is infringed by the mere act of reproduction, performance, distribution, or display—*i.e.,* if it falls within the scope of the rights outlined in § 106—or (b) it requires additional elements to make out a cause of action, but the additional elements do not differ in kind from those necessary for copyright infringement—the "extra element" test. *See id.* at 677–78 n. 26.

### B. *Stephen & Hayes' Complaint*

Stephen & Hayes owns copyrights in its architectural plans and building designs as to particular homes.[4] In each of the disputed counts—counts II, III, and IV—of the complaint, Stephen & Hayes alleges that Meadowbrook "used" the particular Stephen & Hayes' homes in the course of its business without authorization. Meadowbrook "used" the copyrighted property by telling "potential home buyers that visited Riverbrook Estates who were interested in the Walnut and/or Chestnut to drive to Pheasant Landing and look at Stephen & Hayes' Falcon and/or Cardinal because Stephen & Hayes' models were the same as Meadowbrook's models."

---

2. There is no dispute that Stephen & Hayes owns valid copyrights.

3. There is no dispute in this case regarding this element.

4. The plans and designs presumably received copyright protection under the "architectural works" and/or the "pictorial, graphic, and sculptural works" categories of § 102. *See* 17 U.S.C. § 102 (protectable categories) and § 101 (definitions of "architectural works" and "pictorial, graphic, and sculptural works").

Based on that allegation—some of the counts contain additional allegations which will be discussed when pertinent—Stephen & Hayes brings claims premised on the UDTPA, unfair competition, and unjust enrichment. Meadowbrook argues that each of the state law claims is preempted by the Copyright Act.

The court will determine whether each state law claim is preempted under the following analytical framework: (1) first, the court will examine the elements of the state cause of action to determine if the cause of action prohibits the reproduction, distribution, performance or display—*i.e.*, the rights outlined in § 106 of the Copyright Act—of the copyrighted material, *see Harolds Stores, Inc. v. Dillard Dep't Stores*, 82 F.3d 1533, 1543 (10th Cir.) (to determine if the state cause of action "asserts rights equivalent to those specified in § 106 of the Copyright Act—and is thereby preempted by § 301— we compare the elements of the causes of action, not the facts pled to prove them."), *cert. denied*, —— U.S. ——, 117 S.Ct. 297, 136 L.Ed.2d 216 (1996); *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 659 (4th Cir.) (same), *cert. denied*, 510 U.S. 965, 114 S.Ct. 443, 126 L.Ed.2d 377 (1993); (2) next, if the cause of action requires "extra elements," the court will determine whether the additional elements differ in kind from those necessary for copyright infringement such that the nature of the action differs "qualitatively" from a copyright infringement action, *see Baltimore Orioles*, 805 F.2d at 677–78 n. 26; *Computer Associates Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir.1992).

■ One last point. The court is aware that a couple of decisions held that when determining if a state cause of action is preempted one should *not* look to the allegations underlying the action, rather, the focus should be exclusively on the elements necessary to establish the claim. *See Harolds Stores*, 82 F.3d at 1543; *Trandes*, 996 F.2d at 659. The court does not agree with that reasoning. Granted, the elements of the

state cause of action are the starting point, but, the court finds that because many causes of action prohibit a broad range of conduct—such as the UDTPA, *see* 815 ILCS 510/2, and common law unfair competition, *see Wilson v. Electro Marine Sys., Inc.*, 915 F.2d 1110, 1118 (7th Cir.1990) ("The law of unfair competition ... is elusive; its elements escape definition....") (analyzing New York law)—the allegations underlying the cause of action should be examined to determine the nature of the action. Is the "nature" of the state cause of action qualitatively different from the "nature" of the copyright infringement action? If so, the claim is not preempted.

### 1. UDTPA

■ Stephen & Hayes' claim under the UDTPA is premised on an alleged violation of § 2(2) and § 2(3).[5] *See* 815 ILCS 510/2(2) and (3). The elements of a § 2(2) violation is deceptive conduct that (1) causes a likelihood of confusion or of misunderstanding as to (2) the source, sponsorship, approval or certification of (3) goods or services. 815 ILCS 510/2(2). The elements of a § 2(3) violation is deceptive conduct that (1) creates a likelihood of confusion or of misunderstanding as to (2) the affiliation, connection or association with, or certification (3) by another. 815 ILCS 510/2(3).

First step.

The elements to state a cause of action under the pertinent provisions of the UDTPA do not explicitly prohibit the reproduction, distribution, performance, or display— the rights protected by § 106 of the Copyright Act—of an object. Of course, because the UDTPA provisions prohibit conduct that causes "likelihood of confusion," certainly the unauthorized reproduction, distribution, performance, or display of another's "goods" could create such "likelihood of confusion." Nevertheless, because the pertinent provisions of the UDTPA are not infringed by the mere act of reproduction, distribution, performance, or display—rather, they are in-

---

5. The complaint fails to state the pertinent provisions of the UDTPA that count II is premised on. Stephen & Hayes definitely relies upon § 2(2)— count II utilizes the language of this subsection.

It appears count II is also premised on § 2(3). The count alleges that Meadowbrook created

confusion as to the whether Stephen & Hayes "authorized" Meadowbrook to use Stephen & Hayes' homes. This sounds like a violation of § 2(3) which penalizes one who creates confusion as to the affiliation, connection or association with, or certification by another.

fringed by conduct that creates a "likelihood of confusion"—the court concludes that the UDTPA claim is not preempted under the first step of the analysis.[6]

Second step.

The pertinent provisions of the UDTPA contain an element not required to establish a violation of the Copyright Act—"likelihood of confusion." *See Nash v. CBS, Inc.,* 704 F.Supp. 823, 832 (N.D.Ill.1989) ("[C]onfusion is not an essential element of an infringement action under the Copyright Act."), *aff'd,* 899 F.2d 1537 (7th Cir.1990). Indeed, copyright infringement occurs when the work at issue is "copied" by way of reproduction, distribution, performance, or display—there is no need to show likelihood of confusion. The issue, however, is whether this "extra element" qualitatively changes the nature of the UDTPA action as compared to the copyright infringement action. Because the element of "likelihood of confusion" encompasses an infinite variety of deceptive conduct, the court finds that it must focus on the allegations underlying the UDTPA action to determine if the nature of the action differs qualitatively from the nature of the copyright infringement action.

The copyright infringement action—count I—is based, as far as the court can decipher, on the unauthorized reproduction of Stephen & Hayes' drawings, plans, concepts, and/or products. The UDTPA action—count II—however, is based, as noted above, on Meadowbrook's discussion with potential home buyers who were interested in some of Meadowbrook's homes to drive to a certain subdivision and view particular Stephen & Hayes' homes because Meadowbrook and Stephen & Hayes' models were identical. As a result of Meadowbrook's conduct, Stephen & Hayes

alleges that the potential home buyers were confused as to (1) the source, sponsorship, approval, or certification of Meadowbrook's homes and (2) whether Stephen & Hayes authorized Meadowbrook to utilize Stephen & Hayes' homes.

The court finds that the copyright infringement action and the UDTPA action are focusing on qualitatively different conduct. The copyright infringement action focuses on the unauthorized "copying" or reproduction of Stephen & Hayes' copyrighted materials. The UDTPA action, on the other hand, does not focus on the unauthorized reproduction, distribution,[7] performance, or display [8] of the copyrighted material; rather, it focuses on Meadowbrook's "utilization" of Stephen & Hayes' model homes to entice potential customers to purchase its homes. The count alleges that confusion was created by Meadowbrook as to whether Stephen & Hayes endorsed Meadowbrook's products or as to the affiliation or relationship between Meadowbrook and Stephen & Hayes.

The court finds such conduct to be qualitatively different as compared to the nature of a copyright infringement action.[9] An infringement of a copyright does not necessarily create confusion as to the endorsement of one's products or the affiliation between two entities. The nature of this UDTPA action is essentially focusing on the confusion created regarding the "relationship" between the two home builders. The court finds such an action escapes preemption.

### 2. Common Law Unfair Competition

Count III is an unfair competition claim under Illinois law. It is premised on the identical allegation stated in count II: that Meadowbrook directed potential customers who were interested in purchasing particular

---

**6.** The court does not agree with the argument that every act of unauthorized reproduction, distribution, performance, or display creates a "likelihood of confusion."

**7.** Meadowbrook argues that its conduct was the equivalent of "distributing" its allegedly similar model of homes; therefore, the UDTPA count is preempted. The court cannot agree with that argument. By directing potential customers to Stephen & Hayes' homes, Meadowbrook was not distributing copies of anything to the public by sale, rental, lease, or lending as required by § 106(3). The alleged deceitful conduct is the

direction of the potential customers to the homes, not the sale of any products.

**8.** Meadowbrook conceded that directing potential home buyers to Stephen & Hayes' homes cannot qualify as an unauthorized "display" of Stephen & Hayes' homes.

**9.** *See Lone Wolf McQuade Assoc. v. CBS Inc.,* 961 F.Supp. 587, 599 (S.D.N.Y.1997) ("[C]onfusion as to source [is] not preempted because [it does] not entail the assertion of rights equivalent to those protected by federal copyright law.").

Meadowbrook homes to view particular Stephen & Hayes' homes because the homes are identical.

▪ The court analyzed whether the UDTPA count was preempted under a two step test. The first step focused on the elements of the cause of action. The problem with the test when analyzing an unfair competition claim is that no one really knows the elements of such a claim. Indeed, as noted by the Seventh Circuit, "[t]he law of unfair competition ... is elusive; its elements escape definition...." *Wilson v. Electro Marine Sys., Inc.*, 915 F.2d 1110, 1118 (7th Cir.1990) (discussing New York law); *see Curtis–Universal Inc. v. Sheboygan Emergency Med. Serv., Inc.*, 43 F.3d 1119, 1123–24 (7th Cir.1994) ("Fortunately, we do not have to determine the outer bounds of the term 'unfair competition'."). Generally speaking, unfair competition requires the misappropriation of the labors and expenditures of another, *i.e.*, one party reaps where another has sown. *Wilson*, 915 F.2d at 1118–19.

▪ Meadowbrook treats the unfair competition claim as the common law equivalent of the UDTPA claim and thus analyzed the two counts as if they were one. The court makes no finding as to whether it agrees with Meadowbrook's reasoning—Meadowbrook may change its position if this matter arises by way of a summary judgment motion. Because Meadowbrook concedes that the two counts are identical and the court concluded that the UDTPA claim survived preemption, obviously, the unfair competition claim must also survive preemption.

### 3. Unjust enrichment

Count IV is an unjust enrichment claim under Illinois law. Identical to counts II and III, the unjust enrichment count contains the allegation that Meadowbrook directed potential customers interested in purchasing particular homes to view Stephen & Hayes' homes because Meadowbrook and Stephen & Hayes' homes are identical.

▪ The elements of unjust enrichment are: (1) the defendant unjustly retained a benefit to the plaintiff's detriment; and (2)

the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience. *HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 137 Ill.Dec. 19, 26, 545 N.E.2d 672, 679 (1989). The elements of an unjust enrichment action do not prohibit the rights protected by § 106 of the Copyright Act—*i.e.*, reproduction, distribution, performance or display. Of course, one could retain a benefit to the plaintiff's detriment by engaging in conduct specified in § 106 of the Copyright Act. But, because an unjust enrichment action does not arise by the mere unauthorized reproduction, distribution, performance or display of copyrightable material, the court does not find the count preempted under the first step of the analysis.

Thus, the court focuses on the extra element of retaining a benefit to the plaintiff's detriment to determine if the unjust enrichment cause of action differs qualitatively from a copyright infringement action. Similar to the UDTPA action, because one can retain a benefit to the plaintiff's detriment in an infinite variety of ways, the court focuses on the factual basis underlying the claim to determine whether the two causes of action differ qualitatively.

As noted, the count contains the allegation regarding Meadowbrook's direction of potential customers to view Stephen & Hayes' homes since Meadowbrook and Stephen & Hayes' homes were identical; but, there is no allegation that the potential customers were confused as to the endorsement of products or the "relationship" between the parties. In the court's opinion, the lack of such an allegation keeps this matter within the realm of preemption. In other words, the allegation regarding the direction of potential customers to Stephen & Hayes' homes by itself is preempted by the Copyright Act.

Although the act of directing the potential customers to Stephen & Hayes' homes does not qualify as a reproduction, distribution, display [10] or performance of copyrightable material, the "utilization" of the homes in this manner is not too far removed from the protected rights within § 106 of the Copyright Act. Indeed, Meadowbrook essentially "showed" the copyrighted material of anoth-

---

10. Once again, Meadowbrook concedes that its     conduct does not qualify as a "display."

er for its own profit—to sell its own products. The court finds that allegation so similar to conduct proscribed by § 106—*i.e.,* reproduction, distribution, display or performance—that the court finds that it is essentially the equivalent of such conduct.

Moreover, the fact that there is no element of likelihood of confusion regarding the endorsement of products or the relationship between the parties means the unjust enrichment action does not differ qualitatively from the copyright infringement action. Absent such an element, the court finds that the unjust enrichment action and the copyright infringement action do not differ qualitatively—the latter alleges that Meadowbrook profited by reproducing or copying the copyrighted work; the former alleges that Meadowbrook profited by "showing" the homes to potential customers. Unlike the UDTPA count, which focuses on the confusion created as to the "relationship" between the parties, the counts sound too similar to conclude that they differ qualitatively.

### IV. *CONCLUSION*

Counts II and III are not preempted; count IV is preempted by the Copyright Act. Defendant's motion to dismiss or, alternatively, for judgment on the pleadings is granted as to count IV, but denied as to counts II and III.